Argued at Pendleton May 3, reversed and remanded July 12, 1921.

# STATE v. SMITH.

(199 Pac. 194.)

**Criminal Law—State Courts have Concurrent Jurisdiction With Federal Courts Under Eighteenth Amendment Granting "Concurrent Power" to Enforce National Prohibition.**

1. Under Const. U. S. Amend. 18, Section 2, providing that Congress and the several states shall have concurrent power to enforce the article by appropriate legislation, the courts of the several states have concurrent jurisdiction with the federal courts over the question of national prohibition, the words "concurrent power to enforce" carrying with them and implying such jurisdiction, enforcement being possible only in and through the courts.

**Criminal Law—Where Different Courts have Concurrent Jurisdiction of Same Offense, Judgment of Court First Acquiring It is Bar to Subsequent Trial in Other.**

2. Where different courts have equal or concurrent jurisdiction of the same offense, the one which first acquires it has exclusive jurisdiction, and the decision rendered in that court constitutes former jeopardy, and is a bar to a subsequent trial in the other.

**Criminal Law—Grand Jury Indictment for Offense Against State not Being Founded on Leave of Court as in Federal Practice, Defendant Should not be Prosecuted in State Court for Offense for Which Previously Convicted in Federal Court.**

3. There being no state law requiring that leave of court be obtained before information can be filed, as in the federal practice, it is for the grand jury, and not the court, to say whether a man should be prosecuted for the violation of a state law, and, since it may be assumed, where the jurisdictions of federal and state courts are concurrent, that no federal court would grant leave to file an information against one for the identical crime for which he had been previously convicted in the state court, a defendant should not be prosecuted in a state court for the doing of the identical thing for which he was previously convicted in the federal court.

**Criminal Law—One Convicted of Violation of Volstead Act in Federal Court cannot be Prosecuted in State Court for Same Offense.**

4. Under Volstead Act, Title II, Section 3, prohibiting the manufacture, sale, etc., of intoxicating liquors, enacted pursuant to Const. U. S., Amend. 18, a person against whom an information had been filed in the federal court, charging a violation of the act, to

---

1. Federal constitutional or legislative provisions as affecting state legislation, see notes in 10 A. L. R. 1587; 11 A. L. R. 1320.

4. Construction and effect of the Volstead Act, see note in 10 A. L. R. 1553.

which he pleaded guilty and paid his fine, cannot again be indicted, prosecuted and convicted in the state court under Const. Or., Article I, Section 36, and Laws of 1915, page 150, Section 5, as amended by Laws of 1917, page 46, Section 1, for the doing of the identical thing on the same day charged in the former information, in view of the former jeopardy provisions of Const. U. S., Article V, and Const. Or., Article I, Section 12, Const. U. S., Amend. 18, Section 2, granting to the state courts concurrent power with the federal court to enforce national prohibition through appropriate legislation by the state, and Const. U. S., Amend. 10, reserving to the states powers not delegated to the United States, being applicable only to the exercise of separate and distinct powers.

From Union: J. W. KNOWLES, Judge.

In Banc.

On June 10, 1920, the defendant was indicted by the grand jury of Union County, charged with the crime of possessing intoxicating liquor, committed as follows:

"The said Ward Smith, on the thirtieth day of April, 1920, in the county of Union, and State of Oregon, then and there being, did wrongfully have in his possession and possess, intoxicating liquor, in the amount of five gallons, all contrary to the statutes, etc."

To this indictment, both orally and in writing, he entered a "plea of former jeopardy," in the District Court of the United States for the District of Oregon, from which it appears on May 19, 1920, an information was filed against him in that court in which, in count No. 1, it is charged:

"That Ward Smith, the defendant above named, did on, to wit, the thirtieth day of April, 1920, in the vicinity of La Grande, in the State and District of Oregon, and within the jurisdiction of this court, knowingly, willfully and unlawfully have in his possession a quantity of intoxicating liquor, said liquor containing more than one half of one per cent of alcohol by volume; contrary to the form of statute, etc."

The defendant was arraigned May 19, 1920, plead guilty, and was adjudged to pay a fine of $250, and that he be committed to jail until the fine was paid. The defendant paid his fine. It is then further alleged:

"That the liquor mentioned in this indictment in this court and cause is the same liquor as that referred to in the said information hereinbefore set forth in the District Court of the United States for the District of Oregon.

"And the defendant pleads that the above facts show conclusively that this defendant cannot by law be again put upon his trial upon this indictment."

To this "plea of former jeopardy" the state filed a demurrer "for the reason that such a conviction, if any, in such court under the federal law is not a bar to the trial and conviction of the defendant under the law of Oregon for the violation of the laws of the State of Oregon; that the said plea does not constitute any defense to the charge alleged in the instant indictment." On January 6, 1921, it was ordered and adjudged by the court that the demurrer should be sustained, "whereupon defendant in open court having declined to plead further as to said plea of former jeopardy, and defendant having announced in open court that he will plead guilty to the indictment, and stand on said plea of former jeopardy," on January 8th, he was sentenced to pay a fine of $100, from which ruling and judgment of the court the defendant appeals, claiming "that the court erred in sustaining the demurrer to the plea of former jeopardy and entering judgment whereby this defendant was sentenced to pay a fine of one hundred dollars."

REVERSED AND REMANDED.

For appellant there was an oral argument by *Mr. R. J. Green.*

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Ed. Wright,* District Attorney.

JOHNS, J.—Section 36, Article I, of the state Constitution, provides:

"From and after January 1, 1916, no intoxicating liquors shall be manufactured, or sold within this state, except for medicinal purposes upon prescription of a licensed physician, or for scientific, sacramental or mechanical purposes.

"This section is self-executing, and all provisions of the constitution and laws of this state and of the charters and ordinances of all cities, towns and other municipalities therein, in conflict with the provisions of this section, are hereby repealed."

The legislature of 1917 amended Section 5 of Chapter 141 of the General Laws of Oregon for the year 1915, to read as follows:

"Except as hereinafter provided in this amendatory act it shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away or barter any intoxicating liquor within this state; and the place of delivery of any intoxicating liquor is hereby declared the place of sale; provided, that it shall not be unlawful for any person to have in his possession intoxicating liquor lawfully procured and in the possession of such person within this state at the time of the taking effect of this amendatory act, or lawfully obtained or received under the provision of this act."

On January 29, 1919 the Eighteenth Amendment to the Constitution of the United States, which provides for national prohibition, was adopted and reads as follows:

"After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation.

"This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of the several states, as provided in the Constitution, within seven years from the date of the submission hereof to the states by the Congress."

Congress then enacted what is known as the Volstead Law, 41 U. S. Statutes, 305, the material provisions of Section 3 of which are as follows:

"No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage, may be prevented."

Under this section of the Volstead Act, on May 20, 1920, an information was filed against the defendant in the District Court of the United States for the District of Oregon, in which it was charged that on April 30, 1920, in the vicinity of La Grande, Oregon, the defendant did "knowingly, willfully and unlawfully have in his possession a quantity of intoxicating liquor, said liquor containing more than one half of one per cent of alcohol by volume." To this charge the defendant plead guilty and was fined $250, which he paid. On June 10, 1920, the defendant was indicted by the grand jury of Union County, in which

it is alleged that on April 30, 1920, he "did wrong-fully have in his possession and possess, intoxicating liquor, in the amount of five gallons, etc." To this indictment, the defendant duly entered both an oral and written plea of former jeopardy, to which the lower court sustained the demurrer of the state, upon the grounds it was not a defense. From the plea it appears that the date of the possession of the liquor described in the indictment is the same liquor as that described in the information. The plea involves the construction of Section 2 of the Eighteenth Amend-ment to the Constitution of the United States, which says "the Congress and the several states shall have concurrent power to enforce this article by appropri-ate legislation." In other words, whether a person informed against in the United States court for having liquor in his possession in violation of the National Prohibition Act, can be prosecuted under the state prohibition laws for having the same liquor in his possession and at the identical time alleged in the information filed in the United States court. Article V of the Constitution of the United States, among other things, says:

"Nor shall any person be subject for the same of-fense to be twice put in jeopardy of life or limb."

Section 12, Article I, of the state Constitution says:

"No person shall be put in jeopardy twice for the same offense, nor be compelled in any criminal prose-cution to testify against himself."

In the discussion of this case it should be borne in mind that what is known as the state prohibition or "bone dry" law, was adopted in November, 1916; the National Prohibition Law was adopted on the twenty-ninth day of January, 1919; the information against the defendant in the United States District Court was

filed on the nineteenth day of May, 1920, and the indictment against him in the Circuit Court of Union County was found on the tenth day of June, 1920; that the United States exercised its jurisdiction first, and that the question is not involved as to what jurisdiction, if any, the United States might have if the defendant had first been tried and convicted in the state court. The importance of this distinction is pointed out in the opinion of the *United States* v. *Barnhart et al.*, 22 Fed. 285, 10 Sawy. 491. There the defendants, being white men, were indicted by the United States grand jury for the crime of manslaughter in the killing of an Indian, to which they entered a plea of *autrefois acquit*, in that on June 16, 1884, they were indicted for the crime of murder for the killing of an Indian by the grand jury of Umatilla County and were later tried and acquitted. In sustaining a demurrer to the plea, the court says:

"And again, it must be borne in mind that the policy of the state and the United States may be, and sometimes is, at variance on a given subject. In such case, the former may indirectly hinder or defeat the policy of the latter, if a trial in its courts for a crime growing out of an act which also constitutes a crime against the United States can be used as a bar to a prosecution of the offender in the national courts. For instance, the United States, under the fifteenth amendment, may punish anyone who discriminates against the exercise of the elective franchise by another on account of color: *United States* v. *Reese,* 92 U. S. 217 [23 L. Ed. 564]. But if the state may also declare such an act a crime, it may purposely affix a mere nominal punishment thereto, and thus give anyone guilty of such an act an opportunity to seek refuge in its tribunals before the United States can reach him, and by a trial and acquittal therein, at the hands of a sympathizing jury, or the imposition of a mere nominal punishment, effectually prevent the

United States from prosecuting the offender in its own courts, and inflicting such punishment upon him as may be necessary to vindicate its authority and maintain its policy in the premises.

"Indeed, if a trial and acquittal or punishment in a state court, under such circumstances, is a bar to a prosecution in this court for the crime of which these defendants stand indicted herein, it is difficult to see why a pardon by the Governor of the state would not have the same effect. In short, it is impossible that the United States can maintain its paramount authority over the subjects committed by the Constitution to its jurisdiction, and at the same time allow a trial in a state court on a criminal charge growing out of an act that Congress has defined to be a crime, to be a bar to a prosecution therefor in its own courts and according to its own laws."

In *Territory of Oregon* v. *Coleman,* 1 Or. 191 (75 Am. Dec. 554), it was held that "one who sells liquors to Indians may be punished for the same act under the law of the territory and the law of the United States." The opinion quotes with approval from the language of Mr. Justice GRIER of the United States Supreme Court in *Moore* v. *State of Illinois,* 14 How. 13 (4 L. Ed. 306), as follows:

"An offense, in its legal signification, means the transgression of law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace, in consequence of the same act; and may be said, in common parlance, to be twice punished for the same offense. Every citizen of the United States is also a citizen of the state or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offense

against the United States, for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the state, a riot, an assault, or a murder, and subject the same person to a punishment, under the state laws for a misdemeanor felony. That either, or both may (if they see fit) punish such an offense, cannot be doubted. Yet, it cannot be truly averred that the offender has been twice punished for the same offense; but only by one act he has committed two offenses, for either of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently, this court has decided, in the case of *Fox* v. *State of Ohio,* 5 How. 432 [12 L. Ed. 213], that a state may punish the offense of uttering or passing false coin as a cheat or fraud practiced upon its citizens; and in the case of the *United States* v. *Marigold,* 9 How. 560 [13 L. Ed. 257], that Congress, in the proper exercise of its authority may punish the same act as an offense against the United States.''

In the leading case of *Fox* v. *State of Ohio,* 5 How. 432 (12 L. Ed. 213), the court also holds:

''The two offenses of counterfeiting the coin, and passing counterfeit money, are essentially different in their characters. The former is an offense directly against the government, by which individuals may be affected; the latter is a private wrong, by which the government may be remotely, if it will in any degree, be reached, * * '' and that ''if there were a concurrent power in both governments to punish the same act, a conviction under the laws of either could be pleaded in bar to a prosecution by the other.''

In *Houston* v. *Moore,* 5 Wheat. 1 (5 L. Ed. 19), United States Supreme Court Reports, Volume 18, on page 23, the opinion says:

''If, in a specified case, the people have thought proper to bestow certain powers on Congress, as the safest depositary of them, and Congress has legislated within the scope of them, the people have reason to

complain, that the same powers should be exercised at the same time by the state legislatures. To subject them to the operation of two laws upon the same subject, dictated by distinct wills, particularly in a case inflicting pains and penalties, is, to my apprehension, something very much like oppression, if not worse. In short, I am altogether incapable of comprehending how two distinct wills can, at the same time be exercised in relation to the same subject, to be effectual, and at the same time, compatible with each other. If they correspond in every respect, then the latter is idle and inoperative; if they differ, they must, in the nature of things, oppose each other, so far as they do differ. If the one imposes a certain punishment, for a certain offense, the presumption is, that this was deemed sufficient, and under all circumstances, the only proper one. If the other legislature impose a different punishment, in kind or degree, I am at a loss to conceive how they can both consist harmoniously together.

"I admit, that a legislative body may, by different laws, impose upon the same person, for the same offense, different and cumulative punishments; but then it is the will of the same body to do so, and the second, equally with the first law, is the will of that body; there is, therefore, and can be, no opposition of wills. But the case is altogether different, where laws flow from the will of distinct co-ordinate bodies. This course of reasoning is intended as an answer to what I consider a novel and unconstitutional doctrine, that in cases where the state governments have a concurrent power of legislation with the national government, they may legislate upon any subject on which Congress has acted, provided the two laws are not in terms, or in their operation, contradictory and repugnant to each other. * *

"It was contended, that if the exercise of this jurisdiction be admitted, that the sentence of the court would either oust the jurisdiction of the United States court-martial or might subject the accused to be twice tried for the same offense. To this, I answer, that, if the jurisdiction of the two courts be concur-

rent, the sentence of either court, either of conviction or acquittal, might be pleaded in bar of the prosecution before the other, as much so as the judgment of a state court, in a civil case of concurrent jurisdiction, may be pleaded in bar of an action for the same cause, instituted in a Circuit Court of the United States.''

On principle a similar question was involved in *Mayhew* v. *City of Eugene*, 56 Or. 102 (Ann. Cas. 1912C, 33, 104 Pac. 727). That case grew out of a prosecution of the defendant for a violation of an ordinance of the City of Eugene, in which the defendant was charged with maintaining a common nuisance in that he was a lessee and in possession of a certain building in which he did knowingly and willfully engage in the business of selling intoxicating liquors. To this charge he entered a plea of former jeopardy in that a complaint was previously filed against him before a justice of the peace in which he was charged with selling intoxicating liquor to one Dennie, upon which he had been arrested, tried, convicted and sentenced. The opinion says:

''2. It is also contended that, the local option law being in force in the City of Eugene, the city has no authority to legislate in any way against the sale of liquor. We have already held that, when local option has been adopted in any city or incorporated town, all laws or ordinances conflicting therewith are suspended.

''3. In other words, as long as the state law prohibits an act, the city law previously in force cannot be invoked to permit the same act.

''4. There is no conflict between the local option law and the ordinance declaring a place where liquors are sold to be a nuisance. * * ''

The court further holds:

''The offense of making a single sale of liquor is not identical, and cannot be identical with that of

maintaining a nuisance by carrying on the business, and the plea was bad on its face. * * "

It cites the case of *State* v. *Stewart,* 11 Or. 52 (4 Pac. 128), in which Mr. Justice LORD, speaking for the court and quoting from Mr. Justice GRAY in *Morey* v. *Commonwealth,* 108 Mass. 434, says:

" 'The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and, if each statute requires proof of an additional fact, which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other,' Continuing, Mr. Justice LORD says: 'The offense charged in the former and in the present case are not only distinct, but the evidence required to support the one would fall far short of establishing the other.' * * "

We have read with care all the different opinions of the Supreme Court of the United States in the *"National Prohibition Cases,"* 253 U. S. 350 (64 L. Ed. 946, 40 Sup. Ct. Rep. 486). As we analyze them the question here presented was not decided or even discussed, and while inferences *pro* and *con* may be drawn from the language used in the respective opinions, yet all of such inferences are nothing more than mere conjecture. The majority opinion of the court was written by Mr. Justice VAN DEVANTER, in which eleven "conclusions" are announced. In his dissenting opinion, speaking of these "conclusions," Mr. Justice CLARK says:

"The eighth, ninth, and eleventh paragraphs, taken together, in effect, declare the Volstead Act to be the supreme law of the land,—paramount to any state law with which it may conflict in any respect."

He was a member of the court, and his construction of the meaning of those ''conclusions'' is entitled to some weight. They are as follows:

''8. The words 'concurrent power' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several states or any of them; nor do they mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

''9. The power is confided to Congress by that section, while not exclusive, is territorially co-extensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them.

''11. While recognizing that there are limits beyond which Congress cannot go in treating beverages as within its power of enforcement, we think those limits are not transcended by the provision of the Volstead Act (Title II, Section 1), wherein liquors containing as much as one half of one per cent of alcohol by volume and fit for use for beverage purposes are treated as within that power: *Jacob Ruppert* v. *Caffey,* 251 U. S. 264 (64 L. Ed. 260, 40 Sup. Ct. Rep. 141).''

If, as Mr. Justice CLARK says, the Volstead Act is the supreme law of the land and is paramount to any state law with which it is in conflict in any respect, then it must follow that a conviction in the United States court under the Volstead Act for the possession of liquor is a bar to an indictment in the state court for the possession of the same liquor, at the same time.

The state relies upon the case of *United States* v. *Holt et al.,* 270 Fed. 639, in which it is squarely held that:

"The concurrent power given by Const. Amend. 18, Section 2, to the states to enforce that amendment is similar to the power exercised by them in numerous cases, where acts already made offenses under the state law, were made offenses under the United States law, with a provision that the latter law should not affect the jurisdiction of the states, and authorizes each to punish the same act as an offense against its sovereignty."

But again it will be noted that the conditions are reversed. There the defendant was previously indicted and prosecuted by the state court and to the information filed against him in the United States court, plead "a previous conviction in the state court for the same acts," and in that case it was further held that:

"In view of the fact that the National Prohibition Act imposes more severe penalties for a second offense, the conviction and punishment of defendant in the state court for a violation of the state statute does not authorize the refusal of leave to file an information charging those acts as violations of the federal law, but the United States courts in passing sentence will take into consideration the punishment previously involved in the state courts to the end that the citizen may not be twice subjected to the full measure of punishment for the same acts."

The prohibition law of North Dakota under which Holt was convicted and sentenced, had been in force for many years prior to the Eighteenth Amendment, and it was contended that by reason of the second section of the Eighteenth Amendment, the prohibition law of North Dakota was "an exercise by the state of the concurrent power conferred upon the Congress

and the several states to enforce prohibition by appropriate legislation,'' that such power being concurrent, the offense there charged is the same offense for which he had been convicted under the state law. The opinion says:

"A study of the cases can leave no doubt of the soundness and wisdom of the settled law that, where both sovereignties may punish, a conviction by one is not a bar to punishment by the other. Though the acts punished are identical, the offense is not the same.''

In so far as we are advised, this is the only decision of a federal court which places that construction upon the National Prohibition Amendment. Although it was rendered January 8, 1921, it makes no reference to the case of *Ex parte Ramsey et al.*, 265 Fed. 950, decided by Mr. Justice CALL of the United States District Court for the Southern District of Florida, on July 17, 1920. That involved two *habeas corpus* proceedings, one by Ramsey et al. and the other by Stewart et al., in which the petitioners in the first case were discharged and those in the second remanded to custody. The following is the statement of facts from the opinion:

"In the first of the above two cases the petition for the writ of *habeas corpus* alleges that each of the three petitioners was convicted in the criminal court of record for Duval County, Fla., on two informations, charging that on July 2, 1920, they had in their possession, in Duval County, 1,000 quarts of liquor, and sentenced on such convictions to serve terms of six months in the county chain-gang on each offense charged in such informations.

"In the second the four petitioners allege that they are being held in jail by the sheriff of Duval County, awaiting trial in the criminal court of record for Duval County, upon information charging that they had in their possession on July 7, 1920, in Duval

County, 1,500 quarts of intoxicating liquor. The petitioners in each of the cases seek to be discharged from custody on the ground that the state law under which the prosecutions are had is in violation of the Volstead Act (41 Stat. 305), and therefore void.

"In the first cases it is contended, also, that at the time the state authorities took the petitioners in custody, they were then in the custody of a revenue agent of the United States government, under a charge of violating the Volstead Act. No question is made but that under this ground the petitioners must be discharged from the custody of the county officers. This leaves the question common to all the petitioners to be disposed of."

It quotes the ninth "conclusion" from the Supreme Court of the United States, *supra,* and also the following from the opinion of Mr. Chief Justice WHITE:

"It is said, conceding that the concurrent power given to Congress and to the states does not as a prerequisite exact the concurrent action of both, it nevertheless contemplates the possibility of action by Congress and by the states, and makes each action effective; but as under the Constitution the authority of Congress in enforcing the Constitution is paramount, when state legislation and congressional action conflict, the state legislation yields to the action of Congress as controlling. But as the power of both Congress and the states in this instance is given by the Constitution in one and the same provision, I again find myself unable to accept the view urged, because it ostensibly accepts the constitutional mandate as to the concurrence of the two powers and proceeds immediately by way of interpretation to destroy it by making one paramount over the other. * *

"In the first place, it is indisputable, as I have stated, that the first section imposes a general prohibition which it was the purpose to make universally and uniformly operative and efficacious. In the second place, as the prohibition did not define the intoxicating beverages which it prohibited, in the absence of anything to the contrary, it clearly, from

the very fact of its adoption, cast upon the Congress the duty, not only of defining the prohibited beverages, but also of enacting such regulations and sanctions as were essential to make them operative when defined. In the third place, when the second section is considered with these truths in mind, it becomes clear that it simply manifests a like purpose to adjust, as far as possible, the exercise of the new powers cast upon Congress by the amendment to the dual system of government existing under the Constitution. In other words, dealing with the new prohibition created by the Constitution, operating throughout the length and breadth of the United States, without reference to state lines or distinctions between state and federal power, and contemplating the exercise by Congress of the duty cast upon it to make the prohibition efficacious, it was sought by the second section to unite national and state administrative agencies in giving effect to the amendment and legislation of Congress enacted to make it completely operative.''

Mr. Justice CALL then says:

''It is clear in my mind, from the conclusions reached by the majority of the court, as announced in its ninth conclusion, and from the discussion by Mr. Chief Justice WHITE in his concurring opinion, that the second section of the amendment does vest certain powers of legislation in the states to carry out the purposes of the first section of the amendment. If I am correct in this conclusion, does it make any difference whether the legislative action of a state was taken before or after the going into effect of the amendment and the Volstead Act? I think not. Of course, I do not mean to say that the state could pass legislation which would so conflict with the congressional action as to make that a crime under the state law which would not be a crime under the Volstead Act. The decision of that particular question is not involved in these cases, and therefore I express no opinion on that subject. But if any effect is to be given to the second section of the amendment, then surely a

state could pass legislation for the purpose of carry-
ing out the amendment under the authority given in
the amendment itself, which was not in violation of
any provisions of the Volstead Act, and this it seems
to me could be done either before or after the
Eighteenth Amendment went into effect."

The court then holds:

"Such being my conclusion in these matters, the
defendants named in the second case will be remanded
to the county authorities for a trial under the infor-
mation filed in the criminal court of record. The
three defendants named in the first case, on the
ground heretofore noted, will have to be discharged
from custody under said conviction."

As we analyze Mr. Justice CALL's opinion in the
Ramsey-Stewart cases, it is square in conflict with the
decision of Mr. Justice WOODROUGH in the Holt case.
In *United States* v. *Peterson et al.*, 268 Fed. 864, a
plea in bar was filed and sustained in two cases and
overruled in three. The opinion says:

"The Washington Prohibition Law (Laws 1915,
c. 2, p. 2) is more stringent in its provisions as to
possession and use of intoxicating liquors than the
National Prohibition Act (41 Stat. 305). It is some-
times called a 'bone-dry' law. * *

"Section 2, Article XVIII, and Section 2, Article
VI, must have harmonious relation, since no express
declaration in the amendment was made, nor are the
provisions necessarily inconsistent. The national
legislation, therefore, is paramount, and the state
laws, when in conflict, must yield: *Ballaine* v. *Alaska
N. Ry. Co.*, 259 Fed. 183 (170 C. C. A. 251), and
cases cited. * *

"The state, then, may by appropriate legislation
exert its power to enforce Article XVIII, either by
new legislation or appropriate existing legislation.
Neither Article XVIII nor the Congress sought to
destroy any existing remedies by a state to curb the
drink evil, and where existing remedies are provided

by a state, available for the enforcement of Article XVIII, and in harmony with the Prohibition Act, *supra,* the power of the state, through its courts, may be invoked, and a conviction in a state court for conduct which is in violation of the Prohibition Act, *supra,* is a bar to a prosecution in the federal courts. It seems manifest that it was not the intent that a person should be punished by the state and federal law for the same offense.''

On legal principle, under the facts there shown, this case seems to be square in point. It must be remembered that the amendment is to the federal Constitution and that it prohibits the manufacture, sale or transportation of intoxicating liquor anywhere in the United States. Prior to its adoption there were many states which had adopted state prohibition in one form or another. Although their respective laws may have been designed for the same purpose, and in some respects were similar, they were not uniform, that is to say, that each state had a separate and distinct law of its own and had different penalties for the violation of its own law. Again, many of the states, including some of the largest in the Union, never had and may never have state prohibition in any form. The question is thus presented whether it was the purpose and intent of the National Prohibition Act that a person who lives in a prohibition state can be twice prosecuted and convicted for the crime of having liquor in his possession and that whether a person who lives in a state that never has adopted state prohibition can be convicted once only for that crime. That is to say, if a person lives in a prohibition state and has liquor in his possession, he does commit two offenses, one against the United States and one against the state, and if he lives in a state which does not have state prohibition and has liquor

in his possession his offense is against the United States only. As we analyze Section 2, Congress and the several states have "concurrent power" to enforce national prohibition by appropriate legislation. The enforcement of such legislation can only be done in and through the courts, and the words "concurrent power" to enforce carry with them and imply that the courts of the several states have concurrent jurisdiction with the federal courts over the question of national prohibition, otherwise the state courts would not have any authority to enforce that law. The rule is fundamental that where different courts have equal jurisdiction of the same offense or subject matter, the one which first acquires it has exclusive jurisdiction. Cyc., Volume XII, page 264, states the rule:

"Where two courts have concurrent jurisdiction of an offense, the verdict or decision rendered in that court which first acquires jurisdiction constitutes former jeopardy and is a bar to a subsequent trial in the other."

Under the federal practice, leave of court must be first obtained before an information can be filed. Where the jurisdictions are concurrent, and in the absence of some special or extraordinary reason, we have a right to assume that no federal court would ever grant leave to file an information against any person for the identical crime for which he had been previously convicted in the state court. There is no such state law. An indictment by a grand jury for an offense against the state is not founded upon leave of court first had and obtained. Under a given state of facts, it is for the grand jury and not for the court to say whether a man should be prosecuted for the violation of a state law. That is one reason why a defendant should not be prosecuted in a state court for the doing of the identical thing for which he was

previously convicted in the federal court. In the instant case the defendant was fined $250 in the federal court and for doing the identical thing charged in the information in that court he was later indicted, prosecuted and fined $100 in the state court, the legal effect of which is that the government gets the $250 fine and the state the $100. That is to say, that if he had been fined $350 in the federal court, the net result to the defendant would have been the same. Under the facts of the instant case and in the absence of a final decision by the Supreme Court of the United States, the question involved here is one of first impression in this court. The plea of former jeopardy is not only an inherent right which is founded upon the common law, but it is embodied in both the state and federal Constitution and is grounded on the fundamental principle that no man shall be tried and convicted twice of the same offense. Under Article X of its Constitution "the powers not delegated to the United States by the Constitution, nor prohibited by it to the state, are reserved to the states respectively, or to the people." Under the provisions of Article X, it would not be contended that the United States would have any jurisdiction or control over state prohibition, but the sole purpose of the Eighteenth Amendment to the Constitution was to give and vest in the federal government, power and authority over national prohibition and through its adoption, and to that extent and for that purpose, the states surrendered that power to the federal government when the Eighteenth Amendment to the Constitution was adopted. It must be conceded that prior to the adoption of national prohibition, the Oregon state courts had exclusive jurisdiction over questions involving a violation of its prohibition law. Hence

we have this situation. By the adoption of national prohibition, concurrent jurisdiction is vested in both the state and federal courts to enforce that law, and under the theory of the prosecution in this case, the state court would have the power to enforce the state prohibition law and "concurrent power" with the federal court to enforce national prohibition through any appropriate legislation by the state. To say the least, it was never the intent of the National Prohibition Act that a state court should ever have any higher authority or anything more than concurrent jurisdiction with the federal court to enforce the law. There is an important distinction between the joint exercise of a "concurrent power" by the state and nation acting together and the exercise by either of them of a separate and distinct power. On principle, none of the early decisions above quoted, either state or federal, are in point here, and it is only by analogy that they can be applied. From an examination of the facts in them, it will be found that under the provisions of the federal Constitution as it then existed, Congress had enacted certain punitive laws and provided penalties for their enforcement and that under their respective Constitutions as they then existed, the state had legislated upon the same subject matter and provided penalties for the violation of its laws, and that in the enactment of such laws, each acted separately and distinct from the other; there was no joint action and the only limitation upon the powers of either of them was the constitutional limitation, and as to all of such matters, Article X of the Constitution of the United States was then in full force and effect and all of the powers which were not delegated to the United States were by it reserved to the respective states or to the people. In the instant

case, by a vote of the states and of the people, all the powers conferred by the adoption of the Eighteenth ·Amendment were taken away from the states and vested in the government itself. Those early decisions are not founded upon legislation jointly enacted by Congress and the several states. They are based upon legislation growing out of the exercise of separate and distinct powers, one of which was vested in the government under the federal Constitution and the other in the legislatures of the respective states. They were not founded upon an amendment to the federal Constitution which vested in Congress or the states "concurrent power" to enforce any given law by appropriate legislation. In Words and Phrases, Volume 2, page 1391, it is said that:

" 'Concurrent jurisdiction' means equal jurisdiction. 'Concurrent' is having the same authority. Such and such courts have concurrent jurisdiction; that is, each has the same jurisdiction.

" 'Concurrent jurisdiction' is that jurisdiction exercised by different courts, at the same time, over the same subject matter, and within the same territory, and wherein litigants may, in the first instance, resort to either court indifferently. * *

"By conferring on Missouri 'concurrent jurisdiction' on the River Mississippi, so far as the said river shall form a common boundary to the said state and any other state or states bounded by the same, Congress intended to declare that, subject to the other laws of the United States, transactions occurring anywhere on that river between the two states might lawfully be dealt with by the courts of either according to its laws, and that, where a court of one state assumed jurisdiction in a particular case, the same should be exclusive therein until relinquishment: *Sanders* v. *St. Louis & N. O. Anchor Line,* 97 Mo. 26 (10 S. W. 595, 597, 3 L. R. A. 390)."

In Cyc., Volume VIII, page 553, the word "concurrent" is defined as:

"Having the same authority; acting in conjunction; agreeing in the same act; contributing to the same event; contemporaneous; running together; co-operating; contributing to the same effect; acting in conjunction; agreeing in the same act; contributing to the same event or effect; co-operating; accompanying; conjoined; associate; concomitant; joint and equal; existing together, and operating on the same objects."

The plea of former jeopardy is an inherent constitutional right designed to promote the ends of justice. As we construe it, it was never the purpose or intent of the National Prohibition Act that a person against whom an information had been filed in the federal court charging him with the violation of the Volstead Act, to which he plead guilty and paid his fine, could again be indicted, prosecuted and convicted in the state court for the doing of the identical thing and on the same day charged in the information filed against him in the federal court to which he had plead guilty and paid his fine. The demurrer to the defendant's plea of former jeopardy should have been overruled. If true, the facts therein stated are a complete defense to the indictment. The case is reversed and remanded for further proceedings not inconsistent with this opinion.          REVERSED AND REMANDED.