## GILBERT v. STATE. (6 Div. 153.)

(Court of Appeals of Alabama.   Jan. 30, 1923.)

1. Criminal law ⟐201—Acquittal under federal prohibition act does not bar prosecution under state law.

An acquittal in a prosecution in the United States courts under the national prohibition act (41 Stat. 305) does not bar a subsequent prosecution in the state courts for a violation of the state prohibition laws based upon the same transaction.

2. Intoxicating liquors ⟐236(19)—Evidence held to sustain conviction of manufacturing.

Circumstantial evidence held sufficient to sustain a charge of manufacturing liquor, notwithstanding numerous conflicts in the testimony.

3. Criminal law ⟐726—Reference by solicitor to expense of men such as accused held answer to defendant's argument.

In a prosecution for unlawfully manufacturing liquor, where defendant's counsel had argued that the state officers had gone to large expense and had not found or brought in any evidence which would justify a conviction, an argument by the solicitor asking whether the jury realized the economic drain such men as accused were to the county, and the expense it took to make a good man of him, was called forth by the argument of defendant's counsel and was within the scope of legitimate reply thereto.

4. Criminal law ⟐720½, 1171(3)—Statement that defendant was guilty held improper, but not injurious.

A remark by the solicitor in his argument requesting the jury to find defendant guilty, that defendant was "guilty as hell" under the testimony, and the jury knew it, was not a statement as of fact unsupported by evidence, and, though not to be approved, did not injuriously affect the substantial rights of defendant.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Lon Gilbert was convicted of a violation of the prohibition laws, and he appeals. Affirmed.

Pinkney Scott, of Bessemer, for appellant.

Where both the federal and state courts have jurisdiction, the one first acquiring jurisdiction must proceed; and it is a bar to any other proceeding on the same facts against the same party. 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; 197 Ala. 286, 72 South. 540. Counsel argues other questions, but without citation of additional authority.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The prohibition amendment and the Volstead Act did not supersede the laws of the various states on the subject. 18 Ala. App. 101, 90 South. 138; 18 Ala. App. 430, 93 South. 55; 18 Ala. App. 606, 93 South. 216; 207 Ala. 503, 93 South. 472; 18 Ala. App. 218, 90 South. 36.

BRICKEN, P. J. In answer to the indictment, which charged that the defendant did distill, make, or manufacture alcoholic, spirituous, malted, or mixed liquors or beverages a part of which was alcohol, the defendant interposed a plea of former jeopardy, or autre fois acquit; said plea aver-

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 18 Ala. App. 281.

ring that this defendant had been tried for this identical offense in the District Court of the United States for the Southern Division of the Northern District of Alabama, at Birmingham, Ala., and that at such trial the defendant was acquitted, etc.

The state demurred to this plea on the ground that it was not a defense and was no answer to the indictment and the court sustained the demurrers.

This ruling of the court presents the concrete question whether a person who has been acquitted or convicted in a federal court may also be prosecuted in a state court for the same offense or transaction.

[1] In our investigation of this question we are confronted, by what appears to the writer as an anomalous situation, for the federal Constitution, and also the Constitution of the state, both provide in substance that no person shall be put in jeopardy twice for the same offense; and yet, under the decisions of the Supreme Court of the United States and also the Supreme Court of this and other states, it is held that this constitutional inhibition is not violated by a conviction for the same offense in the federal and in the state courts also, and that a trial or adjudication in one court cannot be pleaded in bar to a prosecution for the same offense in the other court. This construction of the provisions of the two Constitutions, supra, is predicated upon the theory that the act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by both. And if the act complained of should be committed within the police jurisdiction of the corporate limits of a town or city, the person accused could also be held to answer therefor in the municipal court of such town or city. It follows therefore, notwithstanding the constitutional inhibition that no person shall be twice put in jeopardy for the same offense, he can for the one single act be tried, and, if convicted, made to suffer three separate and distinct punishments therefor. Such is the law, and this court is without authority to hold otherwise.

In the case of United States v. Lanza, 43 Sup. Ct. 141, 67 L. Ed. 314, where this question is expressly decided, Chief Justice Taft for the court said:

"If Congress sees fit to bar prosecution by the federal courts for any act when punishment for violation of state prohibition has been imposed, it can, of course, do so by proper legislative provision; but it has not done so."

He further states, "It is not for [the courts] to discuss the wisdom of legislation." This is true, and this court cannot controvert the proposition; but we do think there is much force in the statement by Justice Johns of the Supreme Court of Oregon, speaking for the court (in banc) in a well-considered opinion delivered in the case of State of Oregon v. Smith, 101 Or. 127, 150, 199 Pac. 194, 201, 16 A. L. R. 1220–1231, where he said:

"The plea of former jeopardy is an inherent constitutional right designed to promote the ends of justice. As we construe it, it was never the purpose or intent of the national prohibition act that a person against whom an information had been filed in the federal court, charging him with the violation of the Volstead Act, to which he pleaded guilty and paid his fine, could again be indicted, prosecuted, and convicted in the state court for the doing of the identical thing, and on the same day charged in the information filed against him in the federal court, to which he had pleaded guilty and paid his fine."

The opinion goes further and says:

"The demurrer to the defendant's plea of former jeopardy should have been overruled. If true, the facts therein stated are a complete defense to the indictment."

In order to avoid oppression, and the payment of excessive fine, and in order that cruel or unusual punishment be not inflicted, in "this land of the free," we think the law as laid down in Oregon v. Smith, supra, should be the law of the land; but we are without authority to so declare, as the great weight of authorities hold otherwise. United States v. Lanza et al., supra. See also, 16 A. L. R. 1231 (note), and numerous cases there cited. The general trend of these decisions is to the effect that both the sovereignty of the United States and the sovereignty of the state having jurisdiction over the illegal act of manufacturing or distilling prohibited liquors, the same may constitute a criminal offense equally against both sovereignties, subjecting the guilty party to punishment under the laws of both, and the punishment in one sovereignty is no bar to his punishment in the other; and a conviction for the same offense in both the federal and state courts is not in violation of those provisions of the federal and state Constitutions that provide, in substance, that no person shall be twice put in jeopardy of life or limb for the same offense.

Under the above rulings this court must, perforce, hold that the trial court did not err in sustaining the demurrers to the defendant's plea of former jeopardy.

[2] On the trial of this case the defendant reserved numerous exceptions to the ruling of the court upon the testimony. It was shown by the testimony of the officers, who were witnesses for the state, that two copper stills, both in operation, were found in the vicinity of the defendant's home, and that as they, the officers (in the daytime), approached the stills, a bareheaded man was seen by them to run away from the stills; that one of the officers repaired at once to the home of defendant, and when he first

got there saw no one at home, but shortly thereafter he arrested the defendant, who came out on his porch bareheaded, and that the arrest took place within about 20 minutes after the man was seen to run away from the still; that at the time of the arrest the clothes the defendant had on were smutty and dirty. The following statement of facts contained in the brief of the Attorney General appear to be fairly borne out by the record, to wit:

"The testimony offered by the state tends to show that the offense was committed in January, 1921; that defendant when arrested at his home was wearing clothing which was dirty and smutty and in such condition as would naturally have resulted from working at a still; that a cap, a sweater and some gloves were found at the still, and that the defendant when first seen by the officers at his home within a few minutes after the officers had seen some one bareheaded run away from the still, was bareheaded; that two copper stills were found within a quarter to a half mile from defendant's home, the stills being in operation, and there being at the still 10 or 15 gallons of liquor and 15 to 18 barrels of beer; that some whisky was also found at the defendant's home, and 500 pounds of sugar was found in a barn near the defendant's house, and that a key which was taken from defendant's pocket fitted the lock with which this barn was locked; that he admitted at the time of his arrest that the lands surrounding the barn were cultivated by him; that between 40 and 50 empty sugar sacks were found at the defendant's home; that a path led from the still to defendant's home, and when the officers found the still, they followed this path, and in doing so were directed to the home of the defendant; that no one was seen at the house when the officers first got there, but the defendant was seen on the porch bareheaded within a few minutes, and when called out by the officers went and got an old slouched hat and put it on; that the officers in company with the defendant and one of the defendant's witnesses started back to the still, the officers started out on a certain course when the defendant said to them, 'This path is nearer;' that 24 barrels of mash were found at the still, the barrels being red coca-cola barrels with the heads knocked out, and that heads of coca-cola bottles painted red were found at the defendant's home."

The material facts as shown by the state's testimony were practically all denied by the defendant, who insisted that he was not the man who ran away from the still; that he had nothing whatever to do with the making of the whisky or the possession of the still; that the sugar in the barn was not his, nor was it put there by him; that his clothes were not smutty and dirty when he was arrested as testified to by the officers. He also denied any knowledge of the whisky being in his home, which the officers testified they found there. He testified that one of the stills belonged to a man by the name of

Bill Shearer, and that the other still belonged to his half-brother, Grady Gilbert. He testified also that his half-brother, Grady Gilbert, spent the night before with him and left the next morning, and by the defendant's testimony it was shown that the large amount of sugar found in the barn was put there by his half-brother and belonged to Grady Gilbert. However, Grady Gilbert denied that the sugar was his and that he put it in the house. He also denied that one of the stills was his as testified to by his brother, and he also denied that had spent the night before with his brother as testified to by defendant.

These numerous conflicts in the testimony made it a question for the jury, and, in our opinion, there was ample evidence to warrant the jury in returning the verdict of guilt and to sustain the judgment of the court based thereon.

Each of the exceptions reserved to the rulings of the court upon the admission of the testimony has been examined, and we find no error in this connection to injuriously affect the substantial rights of the defendant. There appears no good reason why we should here discuss these numerous exceptions separately, as no new proposition of law is involved in any of them, and to discuss them at length would serve no good purpose and would result only in prolonging this opinion unnecessarily.

[3] The remaining exceptions relate to the closing argument of the solicitor. The record shows that defendant's counsel argued to the jury that the state had sent this large force of officers down there to defendant's house at a great cost and that they had not found or brought any evidence which would justify a conviction, etc. We think the remarks of the solicitor to which objection was made, to wit: "Do you realize what an economic drain they are on your county and your community—such men as Lon Gilbert?" And the further remark, "Do you think of the amount of money and expense it takes to make a good man of him?" were superinduced and called forth by the argument of defendant's counsel and were within the scope of legitimate argument as a reply to the argument of counsel for defendant.

[4] Defendant also made objection to the further remark of the solicitor and excepted to the action of the court in overruling his motion to exclude same. The remark was:

"You find him guilty. He is guilty as hell itself under this testimony, and you know it."

This remark is but the mere expression of counsel made in argument, and does not come within the rule very generally announced, which is: In order that a statement may come within the rule which prescribes the limits of fair discussion, the statement must

be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury. Cross v. State, 68 Ala. 476. This court, while not giving its approval of the character of the argument complained of, would not be warranted in reversing the judgment appealed from, for the reason that we are of the opinion that such argument did not injuriously affect the substantial rights of the defendant.

The only charge requested by defendant was the affirmative charge in his behalf. From what has been said the material conflict in the testimony presented a jury question, and the charge was therefore properly refused.

No error appearing on the record, the judgment of the circuit court is affirmed.

Affirmed.