Argued January 10, affirmed April 24, 1975

STATE OF OREGON, *Respondent, v.*
KEVIN THOMAS HAMMANG, *Appellant.*

534 P2d 501

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

O'CONNELL, C. J.

Defendant was charged with the murder of Clark Syverson. His motion to dismiss the indictment on the ground of double jeopardy was denied and a jury found defendant guilty. The Court of Appeals affirmed the conviction. We granted defendant's petition for review in order to consider what level of prosecutorial knowledge of the possibility of two or more charges growing out of the same act or transaction is sufficient to bar a second prosecution under our ban on double jeopardy as expressed in *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972).

The murder of Syverson was the climax of a feud between two factions in Bend, Oregon. The feud apparently began with what is called the Meadow Camp fracas in early June, 1973. The fracas started out as a beer party at Meadow Camp where a group of people, including Larry Noyes and Richard English, were living. An unwanted guest at the party was a man named Cronen, who apparently began making advances toward the women at the party. Mr. Noyes expressed his disapproval of the conduct to Mr. Cronen and a fist fight broke out which pitted Noyes against Cronen, and later English against Cronen. Mr. Cronen was persuaded to leave the camp. Some minutes later, Cronen returned with two car loads of his friends. The Cronen gang opened fire, wounding one man with a shotgun blast of rock salt. Another man was stabbed in the back with a knife. Everyone scattered and the Cronen bunch thereupon laid waste to the camp, burning Mr. English's tent and its contents and destroying an automobile and various pieces of camp equipment. The Noyes-English faction became both frightened and angry as the result of this incident.

Noyes obtained a pistol to defend himself. English unsuccessfully tried to borrow this pistol and attempted to obtain guns elsewhere during the days immediately following the fracas. English, Noyes and the rest of the Meadow Camp group reported the incident to the police who investigated but so far as the record reveals took no action against Cronen or his compatriots.

Defendant entered the scene approximately a week after the fracas. Just previously he had been released from the Navy and came to Bend from California looking for his old friend, Richard English.[*] He found English and the rest of the Meadow Camp group at Tumalo State Park to which they had moved after the fracas. The two embraced and, discovering the group to be destitute, defendant purchased a keg of beer around which the group told defendant of the fracas, their fear and their anger. According to Mr. Noyes, the defendant seemed upset at what he had heard and stated, "Well, we'll get them sons-of-bitches one by one." Defendant denies having made such a statement.

From the time of defendant's arrival in Bend until the day of the killing, he and Mr. English were constant companions. According to Mr. Noyes, English and defendant continued to discuss "getting back" at the Cronen group and attempted to arm themselves.

Defendant and English spent the morning of June 25, 1973, the day of Syverson's death, drinking. In the afternoon they went to an outdoor store in Bend where defendant broke a display case lock and stole three pistols. He gave one pistol to English, retained one for himself and sold the third to a friend. Defendant and English drove defendant's car to a hardware

---

[*] English and defendant characterize each other as "thumping buddies," meaning that each trusted the other to help make even the odds in any fight in which he might become involved.

store where English purchased ammunition with money provided by defendant. They then practiced firing the pistols until approximately four in the afternoon.

During the late afternoon the two went to Drake Park where they met the victim Syverson, who offered to provide them with narcotics. Defendant agreed to purchase a quantity of cocaine from Syverson and the three left the park in defendant's automobile. Witnesses at the park testified that Syverson was very much under the influence of some drug and was barely able to walk and talk.

They went from Drake Park to a grocery where defendant wished to purchase some milk to ease the distress to his stomach caused by the whiskey with which he had begun the day. English and Syverson remained in defendant's car while he entered the store. During his absence, Mr. Noyes happened by and sat with English and Syverson in the car. English showed Mr. Noyes the gun defendant had given him and Noyes brought up the subject of the Cronen gang. Mr. Syverson, who was seated alone in the rear seat of the car, became agitated and began to shout: "If you mess with us, I dare you to mess with us. And we're not afraid of you." Mr. English indicated to Syverson the gun in his hand and shouted, "Don't you see this? Don't you see this?" By this time, according to Noyes, defendant had returned from the store and was standing next to the car saying, "Don't you see? We've got to shoot the son of a bitch. Shoot him." Mr. Noyes then left the vehicle sensing that there might be trouble in which he wanted no part. He got a few steps inside the store, heard a shot and turned to see defendant's car speed away. He could see Syverson's head tilted back and a bullet hole in the back of the car. Miss Hove, who was in a car parked nearby, also

heard the shot and observed the uncomfortable tilt of Syverson's head as the car left.[2]

Subsequently, Syverson received a total of three shots, all fired by English. English collided with an oncoming car on Highway 97 south of Bend. Soon after the accident both English and defendant fled from the car. English remained at large until picked up by the police the next morning while walking along the highway not far from the accident.

Defendant, however, returned to the vicinity of the accident after a few moments. He soon began to shout obscenities and tear at his clothes proclaiming that "he shot my buddy." The police had to restrain him forcefully to remove him to a hospital for observation.

On June 26, defendant admitted his presence in the car. At first he attributed the killing to a hitchhiker, but soon admitted that English had done it. He also maintained initially that English had stolen the guns, but soon confessed to the crime of theft.

On July 2, English was indicted for the murder of Syverson. On August 6, defendant waived indictment, pleaded guilty, and was convicted of the crime of theft of the guns. On December 11, English was convicted of negligent homicide. On December 21, defendant was indicted for the murder of Syverson acting jointly with English.

In *State v. Brown, supra* 262 Or at 457-458, we held:

"* * * [U]nder Article I, Section 12, of our constitution, a second prosecution is for the 'same

---

[2] Neither defendant nor English remember the incident at the grocery. According to defendant, English shot at and grazed Syverson while English was driving down the highway. In defendant's version, Syverson kept shouting defenses of Cronen and challenges to English after this first shot until English, who was driving, fired two more rounds into Syverson simultaneously colliding with an oncoming car and leaving the highway.

offense' and is prohibited if (1) the charges arise out of the same transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution."

Defendant contends that at the time of his plea and conviction of theft, the prosecutor knew or reasonably should have known of the fact subsequently relied upon to charge him with murder, and that the two offenses are part of the same act or transaction.[9] The state disputes both contentions.

*State v. Brown, supra,* did not purport to limit the prosecutor in fragmentizing *charges,* even if all the charges arose out of a single transaction. The proscription laid down in *Brown* was against the multiple *prosecution* of charges arising out of one transaction. It follows that even if it is assumed in the present case that the prosecutor had all the information he needed to prosecute defendant on the charge of murder, there was no requirement under the double jeopardy principle of *Brown* that he take any steps to consolidate the murder charge with the charge of theft. It is only at the moment when the state begins its prosecution that the two charges, if part of one transaction, must be joined to avoid a subsequent double jeopardy defense.

Assuming no unreasonable delay on its part, the state can decide when it wants to proceed with the prosecution of the various charges which constitute one transaction. If the state has all the information it needs to prosecute each of the charges arising out of one transaction, there still is no constitutional requirement that the state proceed forthwith to consolidate the charges and begin the prose-

[9] It is undisputed that both charges could have been tried in the same court.

cution. And the state's duty to proceed is not enlarged by the circumstance that the defendant unilaterally decides to enter a plea of guilty to one of the charges. Unless the state does more than acquiesce in the entry of the plea of guilty, the state's options as to how it wishes to proceed remain the same. Thus, after the defendant pleads guilty to one of the charges, the state may thereafter prosecute the defendant for the other charges arising out of the same transaction. There is no duty on the part of the state to inform the defendant before he enters his plea of guilty that other charges arising out of the same transaction may be filed.

■ It is true that a prosecution following a plea of guilty subjects the defendant to two proceedings and two convictions, but the danger of undue harassment seen in *State v. Brown* is not present because the first proceeding resulting in a guilty plea is initiated by the defendant himself and not by the state. To recognize that defendant could cut off the state's right to prosecute for other crimes growing out of one transaction by his election to plead guilty to one of the charges would be to make a game out of the double jeopardy principle.

■ The position taken by the dissents that ORS 131.505 and 131.515 mandate a different result is based upon the failure to distinguish between cases of multiple proceedings involving a single offense and cases of separate prosecutions of offenses growing out of the same act or transaction.④ Once a defendant has

④ This analytical error was also present in State v. Brown, *supra.* In *Brown* we were solely concerned with the question of whether the "same evidence" test of double jeopardy satisfied the requirements of our Constitution and not with the stage at which criminal proceedings may begin to constitute harassment. Thus, no direct attention was paid to the fact that defendant Brown had pleaded guilty to the lesser of two outstanding charges which were based upon the same criminal act. The Ore-

been adjudged either guilty or not guilty of an *offense,* additional proceedings based upon the same *offense* are undoubtedly barred both because of double jeopardy and fundamental notions of res judicata. Such proceedings can achieve no result and are the clearest possible case of harassment. The situation, as we have already said, is entirely different when the double jeopardy doctrine is extended to require joinder of charges growing out of distinct offenses which are factually related. There is no reasonable possibility of harassment in such situations, and there is danger of grave injustice if defendants are allowed to pick the charges for which they may be punished.

It is possible to read ORS 131.505 and 131.515 to grant a defendant such extraordinary power. Such a literal reading is not necessary, however, and leads to a patently absurd result. The legislature intended in ORS 131.515 to do two distinct things. In subsection (1) they restated the constitution which, up to that time, had been held to prohibit only multiple prosecutions based upon the "same evidence." In subsection (2) they went further, disallowing the separate prosecution of two or more offenses growing out of the same criminal episode. In defining what constitutes a prosecution in ORS 131.505(5) they enacted what had been the definition for the attachment of jeopardy in decisions determining the scope of protection under the same evidence test. Although in literal terms it may appear that the same definition is made applicable to the extended protection under ORS 131.515(2), the intent to make this additional extension of protection is neither clear nor reasonably inferable. The commentary to the final draft of the Proposed Oregon

gon doctrine of double jeopardy has now evolved sufficiently to present this doctrinal refinement for our consideration. Because we find that the policies underlying the doctrine do not justify the result in *Brown,* it is expressly overruled. This decision, however, is in no way a repudiation of *Brown's* rationale.

Criminal Procedure Code, in which both sections originated, fails to mention guilty pleas in discussing the attachment of jeopardy,[9] and in discussing the same criminal episode rule it speaks only in terms of "multiple *trials*."[10] Thus, for us to construe the statute to mean that a plea of guilty will bar a subsequent prosecution for the same offense but not for other offenses is at least as reasonable as following a literal reading to an absurd result.

Since we find that defendant was not entitled to prevail upon his plea of former jeopardy, we need not determine if the theft of the murder weapon and the murder of Syverson constituted a single transaction or whether, if they did, this fact was reasonably known to the prosecutor.

Affirmed.

McALLISTER, J., dissenting.

If the theft of the guns and the murder of Syverson arose out of the same criminal episode and if both offenses "were reasonably known" to the prosecutor and if both offenses could have been tried in the same court, then the prosecution of defendant for the theft of the guns was a bar to a subsequent prosecution for Syverson's murder.

If ORS 131.505 and 131.515 were applicable, they obviously would dictate the above result.

ORS 131.515(2) provides as follows:

"No person shall be separately prosecuted for

---

[9] Criminal Law Revision Commission, Proposed Oregon Criminal Procedure Code (Final Draft and Report, November 1972), pp. 16-17.

[10] *Id.* at 20: "Subsection (2) states the general policy that a person shall not be unnecessarily subject to multiple *trials*. Generally this idea has been attached to the double jeopardy clause under the so-called 'same transaction' test. Here, the consideration of fair trial and due process of law should be ample basis for restricting separate trials for the same criminal episode." (Emphasis supplied.)

two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

ORS 131.505(4) defines a criminal episode as follows:

" 'Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

ORS 131.505(5) defines the phrase "prosecuted for an offense" as follows:

"A person is 'prosecuted for an offense' when he is charged therewith by an accusatory instrument filed in any court of this state or in any court of any political subdivision of this state, and when the action either:

"(a) *Terminates in a conviction upon a plea of guilty;* * * *." (Emphasis supplied.)

The above provisions are based in substantial part on the American Law Institute's Model Penal Code (Proposed Official Draft approved May 4, 1962). Section 1.07(2) of the Code provides that a defendant shall not be subject to separate trials for multiple offenses arising from the same criminal episode if such offenses are known to the prosecutor at the commencement of the first trial and are within the jurisdiction of the same court. Section 1.09 bars a second prosecution for a different offense when the former prosecution resulted in a conviction and the second prosecution is for an offense which should have been tried on the first prosecution under section 1.07. Conviction, as employed in section 1.09 *includes a plea of guilty* accepted by the court in the former prosecution (section 1.08(3)).

If the statutes quoted above from the 1973 Criminal Procedure Code were applicable, it is clear that defendant's conviction on a plea of guilty for the theft of the guns would bar a later prosecution of another crime arising out of the same criminal episode if the prosecutor "reasonably" knew of both offenses when the prosecution of the theft charge was commenced. Certainly both the theft and the murder could have been tried in the same court.

It appears that the statutes quoted above do not directly affect this case because they were enacted in 1973 as a part of a new Criminal Procedure Code which, by its terms, took effect on January 1, 1974. Both the prosecution for theft and the separate prosecution for murder were commenced in 1973—the latter charge on December 21, 1973. It is clear, however, that, as applied to this case, the quoted statutes made no significant change in the applicable law.

It is well settled that a former conviction based upon a plea of guilty is sufficient to sustain a plea of former jeopardy in a subsequent prosecution for the same offense. *State v. Stover,* 271 Or 132, 531 P2d 258, 263 (Jan. 29, 1975); *State v. Smith,* 101 Or 127, 150, 199 P 194, 16 ALR 1220 (1921). *See, also, Ray v. State,* 231 S2d 813, 814-815 (Fla, 1970); *People v. Thompson,* 10 CA3d 129, 88 Cal Rptr 753, 758 (1970); *Reyes v. Kelly,* 224 S2d 303, 306 (Fla, 1969), cert. den. 397 US 958; *Hawkins v. State,* 30 Wis 2d 264, 140 NW2d 226, 228 (1966); *People v. Sturdy,* 235 CA2d 306, 45 Cal Rptr 203, 209 (1965); *Markiewicz v. Black,* 138 Colo 128, 330 P2d 539, 541, 75 ALR2d 678 (1958); *People v. Krupa,* 64 CA2d 592, 149 P2d 416, 421 (1944); *Boswell v. State,* 111 Ind 47, 11 NE 788, 790 (1887); *People v. Goldstein,* 32 Cal 432, 433 (1867); Annotation, Double Jeopardy—Plea of Guilty, 75 ALR2d 683, 686; 21 Am Jur 2d 231, Criminal Law § 165; 22 CJS 654, Criminal Law § 248.

In *State v. Brown,* 262 Or 442, 458, 497 P2d 1191 (1972), we held that:

"\* \* \* [A] second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the *same act or transaction,* and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution." (Emphasis supplied.)

In *State v. Fitzgerald,* 267 Or 266, 516 P2d 1280 (1973), a case involving our permissive joinder statute (ORS 132.560(2)), we held that "two charges arise out of the *same act or transaction* if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." (Emphasis supplied.) 267 Or at 273.

In *State v. Boyd,* 271 Or 558, 533 P2d 795, 799 (1975), we determined that the test of *Fitzgerald* was the equivalent of the statutory definition of the "same criminal episode" in ORS 131.505(4). We said:

"\* \* \* We are unable to conceive of 'continuous and uninterrupted conduct \* \* \* so joined in time, place and circumstance' that such conduct is directed to the accomplishment of a single criminal objective, which at the same time would not fulfill the test of *Fitzgerald* and be 'so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' (267 Or at 273.) We hold, therefore, that 'same criminal episode' in ORS 131.515(2) is synonymous with same transaction in ORS 132.560(2)."

It thus appears that the applicable law in effect prior to January 1, 1974 did not significantly differ from the law as enacted by the statutes quoted above. Since a person is "prosecuted for an offense"

if his conviction is "upon a plea of guilty" defendant's plea of former jeopardy is a bar to another prosecution for the same crime or another crime based on the same criminal episode and the other necessary conditions exist.

In my view the court should determine whether the theft of the guns and the murder of Syverson arose out of the same criminal episode and whether both offenses were "reasonably known" to the prosecutor when the first prosecution was commenced. If both questions are answered in the affirmative then the defendant's plea of former jeopardy should have been allowed.

I dissent.

TONGUE, J., dissenting.

I agree with the position of the majority to the effect that it is "unreasonable" to permit a defendant, by pleading guilty to a lesser charge, to avoid prosecution on a more serious charge. I cannot agree with the majority, however, in its "interpretation" of ORS 131.505 and 131.515 in such manner as to avoid that result.

To me, the terms of this statute, as enacted by the legislature in 1973, are clear and unambiguous and require the contrary result for the reasons stated by the dissenting opinion by McAllister, J. In such a case I do not believe that this court, by the process of statutory "interpretation," may properly avoid such a result on the ground that it is "unreasonable."

In my view, when the legislature enacts a statute in clear and unambiguous language, as in this case, such language should be given effect by this court even though the result is one which the legislature did not intend. If the legislature did not intend such a result in this case, the legislature may correct the matter in its current session.

In my opinion, for this court to attempt to correct the problem in this case on the ground that such a result is "unreasonable" is an invitation to the courts of this state to interpret all statutes in such a manner as to reach results deemed by courts to be "reasonable," so as to avoid results deemed by the courts to be "unreasonable," despite clear and unambiguous terms of a statute, as in this case. See *Johnson v. Star Machinery Co.*, 270 Or 694, 530 P2d 53 (1974), and dissenting opinion.

For these reasons I dissent.