Argued January 27, reversed May 24, petition for rehearing
denied July 25, 1972

# STATE OF OREGON, *Respondent, v.*
# ROYCE LOVELL BROWN,
## *Petitioner*
### 497 P2d 1191

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General.

McALLISTER, J.

On July 31, 1970, defendant was arrested in Lane County while carrying a concealed pistol. The same day a complaint was filed in the Lane County District Court charging him with the crime of carrying a concealed weapon, a misdemeanor,[1] and on August 27 he was convicted in the district court on a plea of guilty. In the meantime, on August 25, defendant was indicted by the grand jury for the crime of being a convicted person in possession of a firearm, a felony.[2] On Sep-

---

[1] ORS 166.240:

"(1) Any person who carries concealed about his person in any manner, any revolver, pistol, or other firearm, * * * shall be punished upon conviction by a fine of not less than $10 nor more than $200, or by imprisonment in the county jail not less than five days nor more than 100 days, or both."

[2] ORS 166.270:

"* * * any person who has been convicted of a felony against the person or property of another * * * who owns, or

tember 2, 1970, he entered a plea of not guilty to the indictment, accompanied by a plea of former conviction.[9] Although it was stipulated that the indictment was based on the same incident as was the district court complaint and that the sentence imposed by the district court had been executed, the plea of former conviction was rejected. Defendant was then convicted on the felony charge and sentenced to five years in the penitentiary. He appealed, claiming a violation of the constitutional guarantee against double jeopardy.[10]

The Court of Appeals affirmed, relying on *State v. Miller,* 5 Or App 501, 484 P2d 1132, review denied (1971), cert. denied April 4, 1972. *Miller* involved an identical fact situation and the Court of Appeals held that defendant had not been twice in jeopardy for the same offense. It assumed that this court had adopted the "same evidence" test and held that, under that test, the two charges did not involve

---

has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, * * * shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

[9] ORS 135.820:

"There are three kinds of plea to an indictment:

\* \* \* \* \*

"(3) A former judgment of conviction or acquittal of the crime charged, which may be pleaded either with or without the plea of not guilty."

[10] The Fifth Amendment to the United States Constitution provides:

"* * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *."

The Oregon Constitution, in Article I, Section 12, contains the same guarantee:

"No person shall be put in jeopardy twice for the same offence * * *."

the same offense. The "same evidence" test, in the often-quoted language of *Morey v. Commonwealth*, 108 Mass 433, 434 (1871) is

> "* * * not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal, or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

A conviction under ORS 166.240(1) requires proof that the weapon was concealed upon defendant's person, whereas a conviction under ORS 166.270 requires proof that the defendant has been convicted of a felony, and that he owns or possesses a concealable firearm. No proof of actual concealment is necessary. Under the "same evidence" test, the two charges were not for the same offense, as each required proof of a fact which the other did not. We granted review in this case to consider defendant's double jeopardy claim.

Although this court has quoted the *Morey v. Commonwealth* version of the "same evidence" test on a number of occasions,[5] it has not consistently applied that test when deciding whether successive prosecutions violated the guarantee against double jeopardy. In some cases the decision has been based on that test.[6] In others the court has looked to whether the two

---

[5] State v. McDonald, 231 Or 48, 52, 365 P2d 494 (1962); State v. Weitzel, 157 Or 334, 340, 69 P2d 958 (1937); State v. Stewart, 11 Or 52, 4 P 128 (1883).

[6] State v. Weitzel, note 5, supra; State v. Smith, 101 Or 127, 199 P 194, 16 ALR 1220 (1921); State v. Magone, 33 Or 570, 56 P 648 (1899); State v. Stewart, note 5, supra. See, also, State v. Nodine, 121 Or 567, 256 P 387 (1927) (dictum).

prosecutions were based on the same "transaction."[7] In *State v. Sly*, 4 Or 277 (1872) the court said that offenses are identical only if they are the "same in law and in fact." In some cases the court was concerned with whether one crime was a lesser included offense or constituent element of the other.[8] And sometimes the court has discussed a variety of tests, holding that there was no double jeopardy under the circumstances regardless of which was applied.[9]

No logical pattern or consistent approach to the problem emerges from these cases, and the same is true when we look to other jurisdictions. Although the "same evidence" test in some form[10] is most commonly applied, our research suggests that the following ob-

---

[7] State v. Newlin, 92 Or 597, 182 P 135 (1919); State v. McCormack, 8 Or 236 (1880). In *McCormack* the court held that the plea of double jeopardy should have been sustained. Defendant was first convicted of larceny of a saddle and bridle. The second prosecution was for larceny of a horse, taken from the same person at the same time and place. Both the general larceny statute and a statute prohibiting larceny of a horse were involved. If the "same evidence" test had been applied, the second prosecution would have been permitted.

[8] State v. Keep, 85 Or 265, 166 P 936 (1917); State v. Magone, note 6, supra (dictum).

[9] State v. McDonald, note 5, supra; State v. Howe, 27 Or 138, 44 P 672 (1895).

[10] The author of the Comment, Twice in Jeopardy, 75 Yale L J 262, 273 (1965) has identified several distinct forms of the test in addition to that formulated in Morey v. Commonwealth, which he lists as follows: (1) Offenses are the same only if proof of the facts alleged in the second indictment would have been sufficient for a conviction under the allegations of the first indictment [See Rex v. Vandercomb & Abbott, 2 Leach 708, 720, 168 Eng Rep 455, 461 (1796), recognized as the case in which the "same evidence" test originated.]; (2) offenses are not the same unless the defendant could have been convicted of the second offense on the evidence required at the first trial; (3) offenses are not the same if each contains an element not included in the other; (4) offenses are the same only if they are identical in law and in fact.

servation, made by Mr. Chief Justice ROBERT S. BEAN in 1895, is still true today:

> "* * * 'The right not to be put in jeopardy a second time for the same cause is as sacred as the right of trial by jury, and is guarded with as much care by the common law and by the constitution': Black, C. J., in *Dinkey v. Commonwealth*, 17 Pa. St. 126. But the solution of the question as to what facts will sustain the plea is attended with difficulty, and has provoked much discussion by the courts and text writers. The general rules upon the subject and the tests usually applied are well settled, but in the method of their application much contrariety of opinion appears, owing, no doubt, to the generality and consequent elasticity of the rules themselves. * * *" *State v. Howe*, 27 Or 138, 140, 44 P 672 (1895).

The problem of defining the same offense has continued to provoke discussion, and the courts have been unsuccessful in devising satisfactory solutions. At the same time, the development of the criminal law has added to the gravity of the problem. When offenses were few, a single course of conduct was not likely to violate more than a single criminal statute. That is no longer true. Over the years, legislative definition of criminal offenses has become more detailed and specific, and previously unregulated areas of behavior have been brought within the scope of the criminal law. Both this phenomenon and its accompanying dangers were recently noted by the United States Supreme Court:

> "* * * [A]t common law, and under early federal criminal statutes, offense categories were relatively few and distinct. A single course of criminal conduct was likely to yield but a single offense. * * * In more recent times, with the advent of specificity in draftsmanship and the extraordinary prolifera-

tion of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction. * * * As the number of statutory offenses multiplied, the potential for unfair and abusive reprosecutions became far more pronounced." *Ashe v. Swenson,* 397 US 436, 90 S Ct 1189, 25 L Ed 2d 469, 476 note 10 (1970).

Oregon has not been immune. A 1960 study which identifies approximately 1,350 separate crimes in Oregon is probably a gross understatement of the number of statutory offenses.[9]

In such a setting, the traditional "same evidence" test provides virtually no protection against repeated prosecutions based on a single act or course of conduct. A prosecutor is limited only by the number of ways in which the legislature has made the defendant's conduct punishable, and may indulge in the harassment against which the double jeopardy guarantee should protect. He may split his case, so that if the first trial results in an acquittal he can try the defendant again, for essentially the same conduct, before a different

---

[9] Beckett, *Criminal Penalties in Oregon,* 40 Or L Rev 1, 121-157 (1960). As the study focused on the penalty provisions rather than the statutes defining the crimes, there was no attempt to isolate each possible criminal offense. Many of our regulatory statutes contain a number of prohibitions with a single penalty provision for any violation; the Beckett study counted each such penalty provision as a single "crime."

The Criminal Law Revision Commission identified 340 crimes in our criminal code prior to its recent revision. The revision (as proposed to the legislature) resulted in a net reduction of 181 crimes. Criminal Law Revision Commission, Proposed Oregon Criminal Code, Final Draft and Report (July, 1970) xxiii. The revision, although eliminating many distinctions and overlapping offenses in the criminal code itself, did not significantly reduce the total number of crimes.

jury[29] or, in case of a conviction, he can prosecute further to obtain what he considers a suitable punishment.[30] He can use the first prosecution as a "trial run," planning on refining his case if the first prosecution is unsuccessful.[31] As a consequence, a defendant is deprived of the assurance that an acquittal is the end of the matter or that a conviction and sentence is the final measure of his guilt and punishment. Moreover, repeated prosecutions strain the resources of defendants and dissipate those of the courts and prosecutors, and deprive judgments of their finality. Modern commen-

---

[29] In Hoag v. New Jersey, 356 US 464, 78 S Ct 829, 2 L Ed 2d 913 (1958) the defendant had been acquitted of robbing three persons on a single occasion. He was later indicted and tried for the robbery of a fourth person during the same incident. The second trial and conviction was held not to violate due process. A similar instance of reprosecution after acquittal was involved in Ashe v. Swenson, 397 US 436, 90 S Ct 1189, 25 L Ed 2d 469 (1970). The conviction was reversed in that case; the court, applying collateral estoppel principles, held that the factual issue of defendant's participation in the crime had been determined in his favor at the first trial.

[30] In Ciucci v. Illinois, 356 US 571, 78 S Ct 839, 2 L Ed 2d 983 (1958) defendant was charged with the murders of his wife and three children, all committed at the same time and place and in the same manner. He was tried first for the murder of his wife and was convicted and sentenced to twenty years in prison. Thereafter he was tried for the murder of one of the children, was again convicted, and received a 45 year sentence. He was tried yet again for the murder of another of the children and this time he was sentenced to death. Evidence of all the murders was presented at all three trials. The repeated trials were held not to be a violation of due process.

[31] Reprosecution in this manner was denounced by the majority in Ashe:

"In this case the State in its brief has frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution: 'No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial.' But this is precisely what the constitutional guarantee forbids." 25 L Ed 2d at 477.

tators are, for these reasons, justly critical of the "same evidence" test.[15]

The United States Supreme Court has never approved or applied the "same evidence" test in a case involving the Fifth Amendment double jeopardy guarantee against successive prosecutions. The court has applied that test in cases involving multiple charges in a single trial and has held that multiple convictions and cumulative punishments are permissible in a single trial if the offenses charged are not the same under that test.[16] The underlying considerations in multiple punishment cases are entirely different from those involved in multiple prosecutions, and a test which is appropriate in one class of cases is not necessarily appropriate in the other class.[17] The court has not

---

[15] See, e.g., Sigler, Double Jeopardy, 155 et seq.; Carroway, *Pervasive Multiple Offense Problems—A Policy Analysis,* 1971 Utah L Rev 105; Fisher, *Double Jeopardy Two Sovereignties and The Intruding Constitution,* 28 U Chi L Rev 591, 608-612 (1961); Kirchheimer, *The Act, The Offenses and Double Jeopardy,* 58 Yale L J 513, 527-534 (1949); McElroy, *Double Jeopardy: The Ephemeral Guarantee,* 5 Crim L Bull 375, 387-399 (1969); Comment, note 10 supra, 75 Yale L J at 274; Comment, The Protection From Multiple Trials, 11 Stan L Rev 735 (1959).

[16] These cases include: Blockburger v. United States, 284 US 299, 52 S Ct 180, 76 L Ed 306, 309 (1932) [adhere to in Gore v. United States, 357 US 386, 78 S Ct 1280, 2 L Ed 2d 1405 (1958)]; Ebeling v. Morgan, 237 US 625, 35 S Ct 710, 59 L Ed 1151, 1153 (1915); Carter v. McClaughry, 183 US 365, 22 S Ct 181, 46 L Ed 236, 251 (1902).

[17] See Carroway, note 15 supra, 1971 Utah L Rev at 111; Fisher, note 15 supra, 28 U Chi L Rev at 609, note 96; Comment, note 15 supra, 11 Stan L Rev at 735-746.

It has been asserted that the problem of multiple punishments does not involve the double jeopardy clause. Fisher, *Double Jeopardy; Six Common Boners Summarized,* 15 UCLA L Rev 81, 86-87 (1967). In Holiday v. Johnston, 313 US 342, 61 S Ct 1015, 85 L Ed 1392, 1396 (1941) the Supreme Court apparently agreed: "The erroneous imposition of two sentences for a single offense of which

made its position clear in multiple prosecution cases. In *Ex Parte Nielsen,* 131 US 176, 9 S Ct 672, 33 L Ed 118 (1889) the court said the "same evidence" test was inapplicable under the circumstances, holding that the second prosecution was barred because it was for an incident or necessary ingredient of the crime of which petitioner had already been convicted. In *Gavieres v. United States,* 220 US 338, 31 S Ct 421, 55 L Ed 489, 490 (1911) the test was applied in a successive prosecution case, interpreting an act of Congress extending the double jeopardy guarantee to the Philippine Islands. The status of decisions under that statute as precedent in Fifth Amendment cases is doubtful. *Green v. United States,* 355 US 184, 197 note 16, 78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119 (1957). See, also, *Abbate v. United States,* 359 US 187, 198 note 2, 79 S Ct 666, 3 L Ed 2d 729 (1959) (separate opinion of Brennan, J.). In *Ashe v. Swenson,* supra, the majority did not find it necessary to reach the question of identity of offenses. Justice Brennan, joined by Justices Douglas and Marshall, indicated in a concurring opinion that he would reject the "same evidence" test in favor of the "same transaction" test.[18] Harlan, J., separately

---

the accused has been convicted, or as to which he has pleaded guilty, does not constitute double jeopardy." But see North Carolina v. Pearce, 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656, 664–665 (1969), where the Court applied the double jeopardy clause to prohibit multiple punishments for the same offense.

[18]

"* * * Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a crim-

concurring, emphasized his understanding that the court was not adopting the "same transaction" test, and the Chief Justice, dissenting, would have applied the "same evidence" test.

Recent Supreme Court decisions do reveal a concern with double jeopardy problems. In 1969 the court overruled *Palko v. Connecticut,* 302 US 319, 58 S Ct 149, 82 L Ed 288 (1937) to hold that the Fifth Amendment guarantee against double jeopardy applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 US 784, 89 S Ct 2056, 23 L Ed 2d 707 (1969). In 1970 two state cases involving multiple prosecutions were decided, and in both cases the protection against double jeopardy was expanded. In *Ashe v. Swenson,* supra, the court held that collateral estoppel was a part of the constitutional guarantee. In *Ashe* petitioner had been tried and acquitted of the robbery of one Knight, one of six victims of a single armed robbery. Petitioner was then brought to trial and convicted for the robbery of another of the victims. The court held that in light of the evidence at the first trial, the only rational basis for acquittal was the issue of petitioner's identity as one of the robbers. As the first jury had determined that question in his favor, the state was barred by constitutionally required principles of collateral estoppel from litigating that issue again.

In *Waller v. Florida,* 397 US 387, 90 S Ct 1184, 25 L Ed 2d 435 (1970) the court held that a conviction

---

inal prosecution, the potentialities for abuse inherent in the 'same evidence' test are simply intolerable." 25 L Ed 2d at 480. See, also, his separate opinion in Abbate v. United States, 359 US 187, 79 S Ct 666, 3 L Ed 2d 729, 735 (1959) and his dissent from the denial of certiorari in State v. Miller, supra.

for violation of a municipal ordinance bars, under the double jeopardy guarantee, a subsequent felony conviction under state law for the same offense. The court rejected the argument, which had long been accepted in Florida and other jurisdictions,[⑨] that the municipality and the state were separate "sovereignties" and that an act which violated the law of each constituted two separate offenses.

Although *Benton, Ashe,* and *Waller* suggest a tendency on the part of the Supreme Court to move toward a broader application of the protection afforded by the double jeopardy guarantee, none of these cases involved the problem of identity of offenses in the sense in which we are concerned in this case. We are without clear authority from the Supreme Court when we consider whether a single act or course of conduct which violates more than one statute constitutes one or more offenses within the meaning of the double jeopardy provision of the Fifth Amendment. However, as our own constitution also prohibits a second jeopardy for the same offense, we need not speculate what the Supreme Court will decide. We are free to adopt our own interpretation of our state constitution.

■ We are convinced that the "same evidence" test does not provide adequate protection, under modern conditions, from the evils contemplated by the double jeopardy guarantee. We hold that under Article I, Section 12, of our Constitution, statutory violations may be the "same offense" for purposes of testing a second prosecution, even though each contains different elements and requires proof of different facts.

---

[⑨] Including Oregon; see Miller v. Hansen, 126 Or 297, 269 P 864 (1928).

It remains, then, to consider how to determine whether a second prosecution is for the same offense. The New Jersey Supreme Court has refused to apply any single test:

"In applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common-law goals. * * *" *State v. Currie*, 41 NJ 531, 197 A2d 678, 683 (1964).

Under the New Jersey rule, a second prosecution may be barred if the elements of oppression or harassment are present, or if it violates the "reasonable expectations attendant upon the first proceeding." The court will also consider possible unfairness to the state should the second prosecution be barred. 197 A2d at 685. We find this approach too indefinite to provide the necessary guidance for the trial courts in ruling on pleas of former jeopardy. In contrast with the mechanical approach of the "same evidence" test, the *Currie* approach requires a case-by-case weighing of many factors to determine whether the second prosecution is fair and in accord with the defendant's "reasonable expectations." We prefer, if possible, to find a standard which can be applied with more assurance and consistency.

The most commonly proposed alternative to the "same evidence" test is some form of compulsory joinder of charges arising out of the same act or transaction. In some states this "same transaction" test has been adopted by statute.

In a 1970 enactment, New York adopted the rule that, with some exceptions, "A person may not be

separately prosecuted for two offenses based upon the same act or criminal transaction".[20] A Minnesota statute limits the state to a single prosecution (and a single punishment) for offenses arising out of the same conduct.[21] A California statute provides that when an "act or omission" is made punishable in different ways by different provisions of the penal code, a conviction or acquittal under one section bars any subsequent prosecution.[22]

The American Law Institute, in the Model Penal Code, has adopted the compulsory joinder approach. With some exceptions, it prohibits multiple trials for "multiple offenses based on the same conduct or arising

---

[20] NY Crim Proc L 40.20(2).

[21] 40 Minn Stats Anno 609.035. This provision was adopted in 1963 as part of a new criminal code. An earlier similar provision had been limited by court decisions. The Advisory Committee's Comments to the 1963 provision state that the new wording was chosen with the intention of effectuating the statute's original purpose—a single prosecution and single punishment for a single behavioral incident.

[22] Calif. Penal Code 654. The statute has been in effect since 1872, and has not always received a liberal interpretation. See Comment, Double Jeopardy, Multiple Prosecution, and Multiple Punishment: A Comparative Analysis, 50 Calif L Rev 853 (1962). More recently, the California Supreme Court, pointing out that where joinder of related offenses is permitted by statute there is no justification for repetitive trials, held that a conviction for exhibiting a firearm in a threatening manner barred a later prosecution for being a convicted felon in possession of a concealable weapon:

"* * * When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." Kellett v. Superior Court, 48 Cal Rptr 366, 409 P2d 206, 210 (1966).

from the same criminal episode."[26] New joinder rules have also been proposed by the American Bar Association Project on Minimum Standards for Criminal Justice. Under the proposed standard, a defendant may request joinder of charges if they are "based on the same conduct or arise from the same criminal episode".[27]

A few states have adopted the "same transaction" test by court decision.[28] Hawaii recently joined that minority when it adopted as a constitutional standard the compulsory joinder provision of a proposed penal code patterned on the Model Penal Code.[29]

■ Our Criminal Law Revision Commission has approved a proposed statutory provision for compulsory joinder:

"No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time

[26] American Law Institute, Model Penal Code, Official Draft 1.07(2).

[27] Standards for Joinder and Severance 1.3.

[28] There is little agreement as to just which states fall within this group, apparently because the test is not consistently applied. See Comment, Double Jeopardy: Vandercomb to Chicos—Two Centuries of Judicial Failure in Search of a Standard, 45 Urban L Rev 405, 444 (1967); Comment, note 15 supra, 11 Stan L Rev at 744; Comment, note 10 supra, 75 Yale L J at 275-277.

[29] State v. Ahuna, 52 Hawaii 321, 474 P2d 704 (1970). The facts are very similar to those in the present case.

In 1964 the House of Lords indicated that joinder of offenses arising out of the same transaction would be required in the future. Connelly v. Director of Public Prosecutions, [1964] A.C. 1254. The case is discussed in Schaefer, *Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe*, 58 Calif L Rev 391 (1970).

of commencement of the first prosecution and establish proper venue in a single court."[@]

A "criminal episode" is defined as

"* * * continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."[@]

This proposal, which has not yet been submitted to our legislature, would go further in its joinder requirements than the Model Penal Code, the New York statute, and the Hawaii rule. Those rules permit an exception to the joinder requirement if the statutes violated by a single act, course of conduct, or criminal episode, have different elements and are directed toward a different harm or evil.[@] The statute proposed by the Criminal Law Revision Commission contains no such exception. We are aware that compulsory joinder of criminal charges raises many problems that would be better solved by the legislature than by the courts. We are concerned, however, with the minimum protection which our constitution requires, and we believe that the double jeopardy guarantee demands a realistic limitation on successive prosecutions by the state. A prosecutor who is or should be aware of the facts ought not to be able, in his sole discretion, to subject a defendant to a series of trials for violations which are part of the same course of conduct and which could be tried together. We hold, therefore, that under Article

---

[@] Criminal Law Revision Commission, Criminal Procedure, Former Jeopardy, Tentative Draft No. 1 (February 1972) at 10.

[@] *Id.* at 1.

[@] See Model Penal Code, note 23 supra, 1.09; NY Crim Proc L 40.20(2)(a), (b); State v. Ahuna, note 26 supra, 474 P2d at 707.

I, Section 12, of our constitution, a second prosecution is for the "same offense" and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution.

■ Applying this test to the present case, we hold that defendant's plea of double jeopardy should have been allowed. It was stipulated that the two charges were based on a single act—carrying a concealed pistol. The first charge, as well as the second, could have been tried in the circuit court.[39] The district attorney, who had the right to control the prosecution in the district court,[40] was aware of defendant's prior felony conviction. The two statutes under which defendant was charged, ORS 166.240(1) and ORS 166.270, are both directed against concealed or concealable firearms. Defendant's conviction must be reversed.

We are aware that the test we have adopted here leaves certain questions unanswered, two of which should be mentioned. First, the above test would not prohibit a prosecution for an offense against state law after a conviction or acquittal for a violation of a municipal ordinance arising out of the same act or transaction. The charges, in such a case, could not be tried in a single court. The Supreme Court, in *Waller v. Florida,* supra, has held that a municipal court prosecution is a bar to a later state court prosecution for the same offense. We do not now decide whether the "same act or transaction" is the proper test to deter-

---

[39] ORS 46.040. The two offenses could have been charged in a single indictment. ORS 132.560(2).

[40] ORS 156.610, 156.520.

mine whether an ordinance violation and a state law violation are the same offense for double jeopardy purposes.

Second, we wish to point out that our decision in this case is limited to instances of successive prosecution, and has no application to the question of multiple punishment. As we have said, the two problems involve entirely different considerations, and this opinion is not intended to limit in any way the power of the legislature to provide for separate and cumulative punishments for different aspects of a single act or course of conduct. We reserve consideration of that question until we are faced with a case in which it is involved.

BRYSON, J., dissenting.

I am unable to agree with the result of the well-reasoned majority opinion by Mr. Justice McALLISTER. The defendant was found guilty by a jury under the facts and the statutory law and previous decisions[1] of this court existing at the time of the commission of the crime and the trial of the case.

The Oregon legislature, as a matter of policy, has adopted two statutes dealing with the problem of citizens carrying firearms. ORS 166.240 provides:

> "(1) Any person who carries concealed about his person in any manner, any revolver, pistol, or other firearm, * * * shall be punished upon conviction by a fine of not less than $10 nor more than $200, or by imprisonment in the county jail not less than five days nor more than 100 days, or both."

---

[1] State v. Weitzel, 157 Or 334, 69 P2d 958 (1937); State v. Smith, 101 Or 127, 199 P 194 (1921); State v. Nodine, 121 Or 567, 256 P 387 (1927). See also State v. McDonald, 231 Or 48, 52, 365 P2d 494 (1962).

ORS 166.270 provides:

"* * * any person who has been convicted of a felony against the person or property of another * * * who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, * * * shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

The statutes make a reasonable distinction. ORS 166.240 pertains to *any person carrying concealed* firearms, and ORS 166.270 prohibits a *person convicted of a felony* from owning or possessing a firearm capable of being concealed. The legislature clearly intended two separate and distinct crimes. Prosecution in the case before us involved ORS 166.270 (convicted felon in possession of a firearm), and the state had to prove the additional element of the crime "that defendant was a convicted felon."

The United States Supreme Court has not disapproved the "same evidence" test in separate trials arising out of separate charges. The "same evidence" test has not been considered in this context. However, in *Blockburger v. United States*, 284 US 299, 52 S Ct 180, 76 L Ed 306, 309 (1932), wherein there was a single trial involving separate charges on the "same evidence," the court stated:

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. Gavieres v. United States, 220 U. S. 338, 342, 55 L. ed. 489, 490, 31 S. Ct. 421, and authorities

cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Com. 108 Mass. 433: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' Compare Albrecht v. United States, 273 U. S. 1, 11, 12, 71 L. ed. 505, 510, 511, 47 S. Ct. 250, and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed."

In *Gore v. United States*, 357 US 386, 78 S Ct 1280, 2 L Ed 2d 1405 (1958), the United States Supreme Court was "strongly urged to reconsider Blockburger," but the court held, in 357 US at 388, "We adhere to the decision in *Blockburger v. United States, * * *.* The considerations advanced in support of the vigorous attack against it have left its justification undisturbed, nor have our later decisions generated counter currents."

I do not believe the prosecution of the defendant under both of the aforementioned statutes offends the constitutional prohibition against double jeopardy. If the above statutes are to be changed or if a form of compulsory joinder statute in criminal cases is to be adopted, that is a matter within the province of the legislature. It should not be done by judicial decision.

I would affirm the decision of the Court of Appeals, which in turn affirmed the trial court.