Argued June 7, affirmed November 10, 1972

STATE OF OREGON, *Respondent, v.*
BOYCE GAIL FAIR,
*Petitioner.*
502 P2d 1150

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. 

McALLISTER, J.

Petitioner was first charged with burglary not in a dwelling.[1] The indictment alleged that he broke and entered a certain motel on January 19, 1971, with the intent to commit larceny therein. At the trial on the burglary charge, after the state had rested its case, petitioner moved for a judgment of acquittal. The motion was granted and a judgment of acquittal was entered on the ground that the state's evidence would not support a verdict of guilty. Although the record of the burglary trial was not introduced in evidence in this case, it appears from reported discussion among court and counsel that the motion for judgment of acquittal was made on the specific ground that the evidence showed that the motel was a dwelling and that if the petitioner had committed burglary it was burglary in a dwelling.[2]

After petitioner was acquitted on the first charge he was indicted for larceny by an indictment alleging the theft of a television set from the same motel on the same date as that alleged in the burglary indictment. Petitioner entered a plea of former jeopardy, which was rejected by the trial court. Petitioner was then found guilty by the jury of the larceny charge

---

[1] ORS 164.240 repealed, Oregon Laws 1971, ch 743, § 432.

[2] ORS 164.230 repealed, Oregon Laws 1971, ch 743, § 432.

and appealed. The Court of Appeals affirmed. *State v. Fair,* 8 Or App 351, 493 P2d 182 (1972).[9]

As the burglary and larceny charges both arose out of the same transaction, this case poses the question of the retroactivity of our decision in *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). In *State v. Clifton,* 240 Or 378, 401 P2d 697 (1965) we said that no question of retroactivity arose in a case which had not been finally disposed of on appeal at the time the new rule was announced. In later cases, however, we have abandoned that principle, and have closely followed the retroactivity rules adopted by the United States Supreme Court. In *Linkletter v. Walker,* 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601 (1965) and in *Tehan v. Shott,* 382 US 406, 86 S Ct 459, 15 L Ed 2d 453 (1966), the Supreme Court assumed, as we did in *Clifton,* that a decision which was not applied retroactively nevertheless applied to cases which had not been finally disposed of at the time it was announced. A short time later, however, the Supreme Court decided *Johnson v. New Jersey,* 384 US 719, 86 S Ct 1772, 16 L Ed 2d 882 (1966), in which it held that the rules announced in *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964) and *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966) would apply only to trials which began after the dates of those decisions.

Since *Johnson* the Supreme Court has continued to specify exactly when new rules should take effect.

---

[9] The Court of Appeals' opinion recites that petitioner was "convicted" of the burglary, and that the conviction was thereafter "nullified" by the trial court. This statement appears to be in error; so far as we can determine, as stated above, the trial court granted an acquittal at the close of the state's case in chief, and the burglary charge was never submitted to a jury.

In *Stovall v. Denno,* 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967) it held that the "lineup" rules announced in *Gilbert v. California,* 388 US 263, 87 S Ct 1951, 18 L Ed 2d 1178 (1967) and *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967) would apply only to lineups which took place after the date of those decisions. In *Desist v. United States,* 394 US 244, 89 S Ct 1030, 22 L Ed 2d 248 (1969) the Court held that *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967) extending the prohibition on electronic surveillance without a warrant to cases in which no physical intrusion was involved, would apply only to cases in which the prosecution sought to introduce the fruits of its eavesdropping into evidence after the date of the *Katz* decision. In *Williams v. United States,* 401 US 646, 91 S Ct 1148, 28 L Ed 2d 388 (1971) it held that *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969) would apply only to searches conducted after *Chimel* was decided.

In *Johnson* the Supreme Court said:

"* * * Of course, States are still entirely free to effectuate under their own law stricter standards than those we have laid down and to apply those standards in a broader range of cases than is required by this decision." 16 L Ed 2d at 892.

For the most part, however, we have followed the lead of the Supreme Court's decisions on retroactivity. We have applied *Miranda* according to the formula in *Johnson,*[4] and have followed *Stovall v. Denno,* supra, in deciding the retroactivity of the lineup cases.[5]

---

[4] State v. Allen, 248 Or 376, 434 P2d 740 (1967); State v. Dills; Stice, 244 Or 188, 416 P2d 651 (1966).

[5] State v. Thompson, 253 Or 430, 452 P2d 754, 455 P2d 179 (1969).

We made an exception, however, in our application of the principles of *Escobedo v. Illinois,* supra. We were first called upon to determine the retroactivity of *Escobedo* before the Supreme Court had spoken. We held, relying on *Linkletter* and *Tehan,* supra, that *Escobedo* would apply only to cases which had not been finally disposed of on the date *Escobedo* was decided.[⊙] After the Supreme Court in *Johnson v. New Jersey,* supra, adopted a more restrictive rule, in *Escobedo* cases we continued to apply our own rule.[⊙] Recently, however, in *State v. Evans,* 258 Or 437, 483 P2d 1300 (1971), we conformed our rule in *Escobedo* cases to that applied by the Supreme Court and overruled our earlier cases.

In *Bouge v. Reed,* 254 Or 418, 459 P2d 869 (1969) we again had to decide the question of the retroactivity of a federally guaranteed right without the guidance of a Supreme Court determination. We relied on criteria set out in *Johnson v. New Jersey,* supra, in making that determination. We held in *Bouge* that the procedural requirements of *Kent v. United States,* 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), which involved remands from juvenile court to adult court, would not be applied retroactively. We indicated in dictum that we would apply *Kent* only to remands which took place after *Kent* was decided.

■ We may draw two conclusions from our recent decisions on retroactivity. First, we are free to choose the degree of retroactivity or prospectivity which we believe appropriate to the particular rule under con-

---

[⊙] Guse v. Gladden, 243 Or 406, 414 P2d 317 (1966); Elliott v. Gladden, 244 Or 134, 411 P2d 287 (1966).

[⊙] Haynes v. Cupp, 253 Or 566, 456 P2d 490 (1969); see, also, North v. Cupp, 254 Or 451, 461 P2d 271 (1969).

sideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires. Secondly, we have tended to restrict the retroactive application of newly-announced rights, giving them only the application which the Supreme Court has adopted as a minimum. In the present case since we are dealing with a new principle of law which rests entirely on our own Constitution the determination of retroactivity or prospectivity is for us alone. The decisions of the United States Supreme Court are not binding on us, but we may look to those cases for guidance.

The Supreme Court has summarized the criteria it employs in deciding questions of retroactivity as follows:

"* * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. * * *" *Stovall v. Denno,* supra, 18 L Ed 2d at 1203.

The first question is whether the new rule substantially enhances the reliability of the determination of guilt. This is a matter of degree. *Johnson v. New Jersey,* supra, 16 L Ed 2d at 889. If the new rule is not central to the fact-finding process, other factors are considered. This approach was described in *Williams v. United States,* supra, 28 L Ed 2d at 395:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal au-

thorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

"It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials. * * *"

Our decision in *Brown,* requiring that the state join in a single proceeding all charges arising out of a single act or transaction, has little to do with the reliability of the determination of guilt. The guarantee against double jeopardy, and our implementation of that guarantee in *Brown,* are concerned primarily with protection of the accused from unnecessary harassment and from the burden of having to defend repeatedly against substantially the same evidence. We also considered the policy of finality in litigation. The purpose of the new rule was to require prosecutors to join, in the first instance, all available charges which they wish to prosecute, so that guilt or innocence can be finally determined in a single proceeding and so that the accused will not have to bear the burden of a series of prosecutions based on a single criminal episode.

■ Before we decided *Brown* prosecutors were not charged with notice that they must join in a single proceeding all charges arising out of the same act or transaction. They were entitled to assume that the "same evidence" test permitted some latitude in bringing successive charges arising out of the same act or transaction if the first charge was aborted because of

prosecutorial error. Under those circumstances we think the state should have a reasonable opportunity to conform its procedure to the new rule announced in *Brown*. We conclude, therefore, that *State v. Brown* should not be applied retroactively.

It remains to decide when *Brown* should become effective. The prosecutor's opportunity to join multiple charges in a single proceeding is irrevocably cut off at the beginning of the *first* prosecution arising out of a particular act or transaction. Once the first trial has begun, the prosecutor is powerless to consolidate charges for trial or to resubmit an indictment to the grand jury for the addition of further charges. This consideration points to the beginning of the first trial as the appropriate point for determining the application of the new rule.

We could give greater effect to the policy of *Brown* by applying it in cases in which the second, or subsequent, prosecution began after the date of that decision. This would protect defendants who have already undergone one prosecution from facing another arising out of a single course of conduct, but would do so at the expense of the state's interest in convicting and punishing offenders for all of their crimes. On balance, we believe the best solution is to make *Brown* applicable only when the prosecution upon which a former jeopardy claim is based began after May 24, 1972, the date *Brown* was decided.

Petitioner's conviction must be affirmed.

O'CONNELL, C.J., specially concurring.

I concur in the principal opinion but I write separately to call attention to a problem in the present case which deserves consideration by the legislature:

The state found it necessary to charge defendant with the crime of larceny because the original proceeding in which defendant was charged with burglary culminated in a judgment of acquittal and there were no further steps open to the state to keep the burglary charge alive so that defendant's guilt or innocence on that charge could be determined. The original proceeding ended as it did simply because the district attorney, in drafting the indictment, decided that a motel did not come within the legal classification of a dwelling. The trial court found this to be error and in effect found a variance between the proof and the indictment. The state would have found itself faced with the same problem if the indictment had charged burglary in a dwelling and the trial court had erroneously decided that a motel was not a dwelling. In such a case the state would have no avenue by which to correct the error because the state would not, under existing statutes, be entitled to appeal from the trial court's ruling.

These procedural obstacles can be removed by expanding the state's right to appeal and by adopting more liberal rules with respect to the amendment of indictments to conform to the proof. There should be legislation to accomplish both of these objectives.[1] If this step is not taken, we perpetuate in Oregon rules of criminal procedure under which an accused is permitted to go free because of a legal error in the course

---

[1] The suggestion for liberalizing the rules for amending indictments would not require legislation. However, if this court undertook the task of modernizing the rules of amending indictments, it would be necessary for us to repudiate some of our previous decisions, for example, State v. Russell, 231 Or 317, 372 P2d 770 (1962) and State v. Moyer, 76 Or 396, 149 P 84 (1915).

of the proceedings even though his guilt or innocence has not been passed upon by the jury.[9]

BRYSON, J., specially concurring.

The defendant stole a color television set from the Truck Ranch Motel, Pendleton, Oregon. He was first tried by a jury for burglary *not* in a dwelling, ORS 164.240. After the parties rested, the court entered a judgment of acquittal because he determined the motel *was a dwelling*. The defendant was then, in the case at bar, charged with grand larceny of the television set, ORS 164.310. The jury found the defendant guilty.

The crime of larceny requires proof of additional and different material facts or evidence than those required for conviction of the charge of burglary not in a dwelling. In accordance with the reasoning stated in my dissenting opinion in *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972), I do not reach the question of retroactivity of the rule laid down by the majority in *Brown*. I would hold defendant's conviction of grand larceny to be valid.

Notwithstanding the above, I concur with MR. JUSTICE McALLISTER's opinion wherein it is stated that the

---

[9] For a more specific treatment of the problem, see Moreland, Modern Criminal Procedure, ch 19 (1959); Orfield, Criminal Procedure from Arrest to Appeal, pp. 233-247 (1947); Comment, Criminal Law—Double Jeopardy—Appeals by Prosecution, 9 U Det L J 93 (1946); Miller, Appeals by the State in Criminal Cases, 36 Yale L J 486 (1927); Steffen, Concerning Double Jeopardy and the New Rules, 7 Fed B J 86 (1945); Statutory Implementation of Double Jeopardy Clauses: New Life for a Constitutional Guarantee, 65 Yale L J 339 (1955); Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L J 513 (1949); Hall, Objectives of Federal Criminal Procedural Revision, 51 Yale L J 723 (1942); Note, *Criminal Law—Amendment of Indictment—Variance*, 37 Yale L J 383 (1928).

rule laid down in *Brown* should be applicable "only when the prosecution upon which a former jeopardy claim is based began after May 24, 1972, the date *Brown* was decided."