Submitted on record and briefs August 30, 1985, affirmed February 26, 1986

## PHILIP CHARLES KELLOTAT,
*Appellant,*

*v.*

## CUPP,
*Respondent.*

(144,912; CA A34995)

714 P2d 1074

Philip Charles Kellotat, Salem, filed the brief *pro se* for appellant.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Kendall M. Barnes, Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Petitioner appeals from a denial of post-conviction relief, contending that he was denied a post-indictment preliminary hearing in violation of his right to equal protection of the law under Article I, section 20, of the Oregon Constitution and the Fourteenth Amendment to the federal constitution. Because we hold that the rule first enunciated in *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981), and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981), and first applied in *State v. Freeland,* 295 Or 367, 667 P2d 509 (1983), is not applicable, we affirm.

Oregon law permits a person to be charged either by grand jury indictment or by a district attorney's information after a showing of probable cause in a preliminary hearing before a magistrate. Or Const, Art VII (Amended), § 5(3) to (5); ORS 132.380 to ORS 132.390; ORS 135.070 to ORS 135.185. In *Clark* and *Edmonson,* the court held that the coexistence of the two procedures, in and of itself, does not violate an accused's equal privileges guarantees so long as the choice of procedure is not administered "purely haphazardly or otherwise on terms that have no satisfactory explanation under Art I, § 20." *State v. Edmonson, supra,* 291 Or at 253. "Haphazard" administration means "standardless administration, in which the procedure is chosen *ad hoc* without striving for consistency among similar cases." *State v. Freeland, supra,* 295 Or at 374.

Here, petitioner was charged with Robbery I by information on October 4, 1979. He requested a preliminary hearing which was scheduled for November 8, 1979. On November 6, 1979, however, the prosecutor obtained a grand jury indictment charging petitioner with the same crime. His request for a preliminary hearing and for an order to show cause why he should not be granted one were denied. He was convicted on March 6, 1980. In this proceeding, he contends that he was entitled, at the least, to a hearing to develop a record as to whether he was entitled to a preliminary hearing after being indicted. *Clark, Edmonson* and *Freeland* had not been decided at the time of petitioner's trial; if the law had been as those cases determined it to be, petitioner would have been entitled to a hearing and, if the trial court had found that

the district attorney's basis for proceeding by way of indictment rather than by information was haphazard, he would have been entitled to a preliminary hearing after he was indicted.

At the post-conviction hearing, the district attorney testified:

"Q   Why did you [file an information]? * * *

"A   Well, the law requires that someone be brought before a court in a speedy fashion once they've been arrested. * * * I don't know of any other way to get someone arraigned unless you have the matter filed in District Court. * * *

"* * * * *

"Q   Why did you decide to refer it to the grand jury on November 6th?

"A   I have no idea. Maybe people were elk hunting, deer hunting, I have no idea."

The post-conviction judge ruled, and we agree, that the prosecutor had no recognizable standards for deciding which procedure to pursue and had no consistent practice in that regard and that he had, in fact, acted haphazardly. Petitioner was denied relief, however, because the judge ruled that the "right" described in *Clark, Edmonson* and *Freeland* should not be applied retroactively.

The criteria employed in deciding the retroactive effect of a newly announced constitutional standard has been summarized:

" "* * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by the law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. * * *" " *State v. Fair,* 263 Or 383, 388, 502 P2d 1150 (1972) (quoting *Stovall v. Denno,* 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967)).[1]

---

[1] In *State v. Fair, supra,* the court said:

"* * * [W]e are free to choose the degree of retroactivity or prospectivity which we believe appropriate to the particular rule under consideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires. * * *" 263 Or at 387.

Here, because we employ the same criteria utilized by the Unied States Supreme Court to determine the retroactivity of a newly announced federal constitutional standard, if

The first criterion concerns the degree to which the new rule affects the reliability of the determination of guilt. *State v. Fair, supra.* In this regard, the rule examined here has little impact; petitioner's guilt is not suspect just because he was haphazardly denied a preliminary hearing. He was found guilty beyond a reasonable doubt and does not challenge the fairness of his trial. The importance of the rule, rather, is to give persons accused of felonies an equal opportunity to avoid defending against unjustified charges. *State v. Clark, supra,* 291 Or at 235. Consequently, in theory at least, the probability of a determination of guilt is not influenced by the charging procedure implemented, although a preliminary hearing may be useful to a defendant in preparing his defense.[2] He does not, however, even after the "full discovery" he obtained during trial, contend that he might have fared better if he had had a preliminary hearing.

Before *Clark* and *Edmonson,* "the two charging procedures were widely thought to be simply alternative tools in the hands of the prosecutor." *State v. Freeland, supra,* 295 Or at 382; *see, e.g., State v. Sanford,* 245 Or 397, 421 P2d 988 (1966); *State v. Phelps,* 8 Or App 198, 493 P2d 1059 (1972). In *State v. Fair, supra,* the court said:

> "Before we decided *Brown* prosecutors were not charged with notice that they must join in a single proceeding all charges arising out of the same act or transaction. They were entitled to assume that the 'same evidence' test permitted some latitude in bringing successive charges arising out of the same act or transaction if the first charge was aborted because of prosecutorial error. Under those circumstances we think the state should have a reasonable opportunity to conform its procedure to the new rule announced in *Brown.* We conclude, therefore, that *State v. Brown* should not be applied retroactively." 263 Or at 389.

---

the haphazard employment of dual charging procedures does in fact violate the federal constitution (an issue not addressed by *Clark* and *Edmonson*), then the requisites of the federal constitution, as well as the Oregon Constitution, are satisfied by our determination.

[2] A preliminary hearing may afford an accused an early view of the prosecutor's case. *State v. Clark, supra,* 291 Or at 235. Regardless of the charging procedure utilized, however, a criminal defendant must be found guilty beyond a reasonable doubt to be convicted.

We believe that the same reasoning applies here. Furthermore, although *Clark* and *Edmonson* foreshadowed the decision in *Freeland,* it was not until *Freeland,* decided after petitioner's conviction had been finally adjudicated, that the criteria for the application of the principles enunciated in *Clark* and *Edmonson* became clear.

To reverse convictions of felons haphazardly denied a post-indictment preliminary hearing before *Clark, Edmonson* and *Freeland* were decided would create serious problems within the judicial system. We conclude, therefore, that the new rule's effect on the fairness of trials and the integrity of the fact finding process is minimal while the potential disruptive effect of retroactive application, because of long-established practices, is great. The rule of *Clark, Edmonson* and *Freeland* should, therefore, not be applied retroactively to proceedings which occurred before those cases were decided.

Finally, although it does not appear to have been clearly raised, the question remains as to when the rule became effective. Petitioner was convicted and sentenced in 1980. On direct appeal, we affirmed without opinion on January 19, 1981. *State v. Kellotat,* 50 Or App 2, 622 P2d 1160 (1981). The Supreme Court denied review on June 30, 1981. 291 Or at 151. *Clark* and *Edmonson* were decided on June 23, 1981, and *Freeland* in 1983.

When federal constitutional rights have been changed to the defendant's advantage after conviction but before the time has elapsed for application for a writ of certiorari to the United States Supreme Court, a defendant may assert the new rights, *North v. Cupp,* 254 Or 451, 461 P2d 271 (1969), *cert den* 397 US 1054 (1970), at least sometimes. *See Williams v. United States,* 401 US 646, 91 S Ct 1148, 28 L Ed 2d 388 (1971). The Oregon Supreme Court has tended to restrict retroactive application of newly announced rights, giving them only the application which the United States Supreme Court has adopted as a minimum. *State v. Fair, supra,* 263 Or at 383. When, however, the new principle or rights rest entirely on the Oregon Constitution, as here, the Supreme Court has gone its own way, looking to the United States Supreme Court's decisions only for guidance.

In *State v. Fair, supra,* the court declined to apply its former jeopardy decision in *State v. Brown,* 262 Or 442, 497

P2d 1191 (1972), requiring the joinder in a single proceeding of all charges arising out of a single act or transaction,[3] to a case where the first prosecution was commenced before the *Brown* decision was announced. It held that *Brown* applied to prosecutions commenced after the date of the decision. The same rule should apply here.

We conclude that *Clark* and *Edmonson* should not be applicable to petitioner, who was convicted before those cases were decided, even though his rights on appeal had not been decided when those decisions were handed down.

Affirmed.

---

[3] The court in *State v. Fair, supra,* characterized its decision in *State v. Brown, supra,* as made under the Oregon Constitution.