On repondent's petition for reconsideration filed September 12, reconsideration allowed, former opinion (103 Or App 71, 795 P2d 1109) adhered to November 28, 1990, reconsideration denied January 16, petition for review allowed February 19, 1991

(311 Or 166)

RALPH ERNEST MOEN,
*Appellant,*

*v.*

R. S. PETERSON,
*Respondent.*

(87C-11030; CA A61667)

802 P2d 76

David L. Runner, Assistant Attorney General, Salem, Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem, for petition.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant petitions for review of our decision that plaintiff's conviction was rendered void by his counsel's failure to advise him of the possibility of a minimum sentence. 103 Or App 71, 795 P2d 1109 (1990). We treat the petition as one for reconsideration, ORAP 9.15(1), allow it but adhere to our former decision.

Plaintiff pleaded no contest to a charge of sodomy in the first degree. ORS 163.405. On direct appeal, we affirmed. 86 Or App 366, 741 P2d 935 (1987). Thereafter, the Supreme Court held in *Hartzog v. Keeney,* 304 Or 57, 742 P2d 600 (1987), that counsel's failure to advise a criminal defendant of the possibility of a minimum sentence before entry of a guilty plea constitutes ineffective assistance of counsel under the Oregon Constitution. The Supreme Court denied plaintiff's petition for review on September 29, 1987. *State v. Moen,* 304 Or 186, 743 P2d 736 (1987). In June, 1989, plaintiff first filed a claim based on *Hartzog* for post-conviction relief.

In our decision, we applied the holding in *Hartzog* to this case and reversed the post-conviction court's decision that plaintiff's knowledge of the possibility of a minimum sentence in a different case for a different crime was sufficient under *Hartzog.* We also reasoned that the analysis used by the court in *State v. Fair,* 263 Or 383, 502 P2d 1150 (1972), to determine whether a constitutional rule should be applied retroactively[1] is not applicable in post-conviction cases, because a post-conviction proceeding is a new proceeding that is distinct from a direct appeal. Therefore, any application of a constitutional principle articulated after a direct appeal has been terminated is prospective and not retroactive.

---

[1] *Fair* applied the criteria used in *Stovall v. Denno,* 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967), and *Williams v. United States,* 401 US 646, 91 S Ct 1148, 28 L Ed 2d 388 (1971), to decide whether a new constitutional rule should be applied "retroactively":

"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 263 Or at 388.

*Fair* says that, when a new constitutional principle rests entirely on the Oregon Constitution, the decisions of the United States Supreme Court are not binding, but the court may look to those cases for guidance. 263 Or at 388. We note that the United States Supreme Court has since modified its criteria. *Teague v. Lane,* 489 US 288, 109 S Ct 1060, 103 L Ed 2d 334 (1989).

Defendant argues:

"In concluding that its application of *Hartzog* was not retroactive, the Court of Appeals overlooked the fundamental fact that the petition for post-conviction relief in this case was a collateral attack on the earlier judgment of conviction. The petition asserted a substantial denial of constitutional rights 'in the proceedings resulting in the [inmate's] conviction.' ORS 138.530(1)(a). Because the proceedings resulting in the inmate's conviction occurred before the date of the *Hartzog* decision, application of *Hartzog* to determine the constitutional adequacy of those proceedings was a retroactive application of *Hartzog*. The Court of Appeals' conclusion to the contrary is erroneous and is irreconcilable with prior case law."

In our opinion, we said:

"The *Fair* test has not been expressly applied in post-conviction relief cases. The longstanding rule in post-conviction relief cases has been that, when a new constitutional principle has been articulated between the time of a petitioner's direct appeal and the post-conviction proceeding, a claim based on the new constitutional principle will be considered in the post-conviction proceeding. *See Twitty v. Maass,* 96 Or App 631, 773 P2d 1336 (1989); *Addicks v. Cupp,* 54 Or App 830, 838, 636 P2d 454 (1981), *rev den* 292 Or 568, *cert den* 459 US 842 (1982); *Myers v. Cupp* 49 Or App 691, 695, 621 P2d 579 (1980),[*rev den* 290 Or 491 (1981)]; *Pettibone v. Cupp,* 43 Or App 955, 959, 607 P2d 742 (1979), *rev den* 289 Or 45 (1980)." 103 Or App at 74.

Our first sentence in that quotation is wrong. In *Kellotat v. Cupp,* 78 Or App 61, 714 P2d 1074 (1986), the petitioner appealed from a denial of post-conviction relief, contending that he was denied a post-indictment preliminary hearing in 1979 in violation of his constitutional rights. He relied on a constitutional rule first enunciated in 1981 that entitled a defendant to a post-indictment preliminary hearing if the prosecutor had no recognizable standards for deciding which charging procedure to use. *See State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981); *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981). Under the criteria in *Fair,* we held that the rule in *Clark* and *Edmonson* was not applicable to the petitioner, even though his appeal had not been decided when those decisions were handed down.

We do not understand defendant's emphasis on the

fact that "the petition for post-conviction relief in this case was a collateral attack on the earlier judgment of conviction." Every petition for post-conviction relief is a collateral attack on the judgment of conviction. It is also a misnomer to characterize the application of the *Hartzog* rule to this case as "retroactive." Unlike the claim in *Kellotat,* ineffective assistance of counsel was not, nor could it have been, an issue on direct appeal. The *Hartzog* decision was rendered 21 months *before* the claim of ineffective assistance of counsel was made by plaintiff in the post-conviction relief proceeding. The issue is whether a newly articulated constitutional rule applies to an issue that could not have been raised on direct appeal and that could have the effect of vacating a previous judgment of conviction.

In *Myers v. Cupp,* 49 Or App 691, 695, 621 P2d 579 (1980), *rev den* 290 Or 491 (1981), we said:

"This court has stated that, where a new constitutional principle is recognized between the time of a petitioner's direct appeal and his petition for post-conviction relief and where he could not have reasonably asserted his claim based on this principle on appeal, it will subsequently be considered on a petition for post-conviction relief. To be entitled to relief, the petitioner must assert a 'substantial denial' of constitutional rights. *Pettibone v. Cupp,* 43 Or App 955, 959, 607 P2d 742 (1979), *rev den* 289 Or [45] (1980); *Lerch v. Cupp,* 9 Or App 508, 497 P2d 379 (1972), *rev den* (1972). *See also Haynes v. Cupp,* 253 Or 566, 456 P2d 490 (1969) [*overruled in part, State v. Evans,* 258 Or 437, 442, 483 P2d 1300 (1971)]; *Cain v. Gladden,* 247 Or 462, 430 P2d 1015 (1967). In *Nunn v. Cupp,* [10 Or App 528, 534, 500 P2d 1237 (1972)], we held that an exception to the general rule that an issue raised and considered on direct appeal cannot be reconsidered in a post-conviction proceeding applies where the law with respect to that issue has changed since the time of appeal and that new law is to be applied retroactively."

Because plaintiff's claim is of constitutional dimension, the fact that his appeal was pending when *Hartzog* was decided is not determinative. Moreover, a claim of ineffective assistance of counsel because of the failure to advise of the possibility of a minimum sentence is a substantial denial of constitutional rights. *Hartzog v. Keeney, supra,* 304 Or at 64. Furthermore, the fact that plaintiff could not have raised the issue on direct appeal and that his only opportunity to raise it is in a petition

for post-conviction relief are important considerations in determining whether the rule in *Hartzog* ought to be applied. *See* ORS 138.050.

■      Defendant argues that we must consider the criteria in *State v. Fair, supra.* We note that the superintendent did not raise this argument in the post-conviction relief court. However, as respondent in this court, he is entitled to change his argument and claim that the post-conviction court was right but gave the wrong reasons. *Tarwater v. Cupp,* 304 Or 639, 644 n 5, 748 P2d 125 (1988).

Even if we were to apply the *Fair* criteria, we would reach the same result. Under *Fair*, we first analyze the purpose to be served by the new constitutional standard. If the new rule substantially enhances the reliability of the determination of guilt and is central to the fact-finding process, it will be applied. If the new rule is not central to the fact-finding process, we consider the extent of reliance by law enforcement authorities on the old standards and the effect on the administration of justice of an application of the new standards. *State v. Fair, supra,* 263 Or at 388.

Defendant argues that knowledge of the possibility of a mandatory minimum sentence is not central to the fact-finding process. We disagree. A plea of guilty or no contest eliminates fact-finding from the trial. The purpose of the *Hartzog* rule is to ensure that the criminal defendant has sufficient information about the consequences of a guilty plea to make or decline to make a knowing waiver of his right to trial. By pleading no contest, plaintiff subjected himself to a potential deprivation of liberty for 20 years and forfeited his right to have a trier of fact determine his guilt. He was faced with a choice of going to trial on multiple charges or entering a plea of no contest to one charge. Under those circumstances, constitutionally adequate performance by counsel requires that a defendant be advised of the legal consequences of a guilty plea. *Lyons v. Pearce,* 298 Or 554, 694 P2d 969 (1985). As the court said in *Hartzog v. Keeney, supra:*

> "[When] a minimum sentence is imposed * * *, the felon must serve that minimum sentence no matter how faithfully he observes the rules of the institution and participates in work and educational programs. That consequence is one of which

an accused must be aware in order to make an informed decision to waive his right to trial and to enter a plea of guilty." 304 Or at 64.

Because the *Hartzog* rule substantially affects the determination of guilt and the fact-finding process, we do not need to consider the other *Fair* factors. Clearly, failure to be advised of a minimum sentence and its duration affects the fundamental fairness of the plea-bargaining procedure and plaintiff's election to forego his constitutional trial rights.[2] We adhere to our former opinion.[3]

Reconsideration allowed; former opinion adhered to.

---

[2] In *Teague v. Lane, supra,* the court noted that new constitutional rules of criminal procedure generally do not apply to cases that have become final before the new rules are announced. 489 US at 310. The court recognized an exception to the general rule when the procedure at issue implicates the fundamental fairness of a trial. 489 US at 312.

[3] Defendant also contends that we exceeded our scope of review under ORS 138.650, by "finding as fact" that petitioner was unaware of the possibility of a ten-year minimum sentence when he entered his plea of no contest. Defendant misconstrues our holding.

Our review in post-conviction cases is limited to questions of law. ORS 138.650; ORS 138.220. Our function is to determine whether the facts found by the post-conviction court are supported by the record and whether its legal conclusion is correct. *Yeager v. Maass,* 93 Or App 561, 564, 763 P2d 184 (1988), *rev den* 307 Or 340 (1989). The post-conviction court concluded that plaintiff was aware of the possibility of a minimum sentence before the entry of his no contest plea, because he had been sentenced to a five-year minimum term in a separate proceeding. In our opinion, we concluded that the fact that plaintiff was aware of the imposition of a different minimum sentence in a different case did not, as a matter of law, constitute knowledge that he was apprised of the possibility of a ten-year minimum sentence in this case. We did not "find as fact" that plaintiff was unaware of the possibility of a minimum sentence.